STEWART T. BECKLEY, Appellant, *v.* OTSEGO COUNTY FARMERS COOPERATIVE FIRE INSURANCE COMPANY, Respondent.

STEWART T. BECKLEY, Appellant, *v.* GLENS FALLS INSURANCE COMPANY, Respondent.

STEWART T. BECKLEY, Appellant, *v.* NORWICH UNION FIRE INSURANCE SOCIETY, LTD., Respondent.

STEWART T. BECKLEY, Appellant, *v.* SCOTTISH UNION & NATIONAL INSURANCE COMPANY OF EDINBURGH, Respondent.

Third Department, January 31, 1957.

*Joseph P. Leary* and *Francis H. Anderson* for appellant.

*Livingston S. Latham* for Otsego County Farmers Cooperative Fire Insurance Company, respondent.

*F. Walter Bliss* for Glens Falls Insurance Company and others, respondents.

HALPERN, J.  The plaintiff's actions against the defendant fire insurance companies have been summarily dismissed on motion, not upon a showing that the plaintiff was not entitled to payment under the policies in the situation which existed at the time of the occurrence of the loss, but upon the ground that he had subsequently breached a condition of the policies by refusing to submit to an examination concerning the loss. This was the sole ground of the defendants' motions for summary judgment.

We have concluded that the motions for summary judgment should have been denied.  It appears to us that there is a question of fact which requires resolution at a trial, as to whether plaintiff's refusal to submit to the examination was justified (cf. *Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N Y 2d 534).

The defendants had issued New York State standard fire insurance policies covering the plaintiff's barn and contents. The policies contained the following provisions relevant to the present controversy: " The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same  *  *  *  The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.  No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with ".

The barn and contents were destroyed by fire on January 5, 1954.  Proofs of loss were submitted on January 12, 1954.  It appears from the defendants' affidavits that within a day or two after the proofs of loss were filed, the defendants received information which led them to believe that the fire had been of incendiary origin and that the plaintiff had himself caused the

fire.   Ever since that time, according to defendants' own affidavits, they have resisted the payment of plaintiff's claim.

Under the terms of the policies, the defendants were required to pay the loss 60 days after the submission of proofs of loss and the ascertainment of the amount of the loss.   In this case, there was no question about the amount of the loss; it was apparently conceded that the loss was a total one and that the loss was in excess of the amount of the insurance policies. According to the affidavit submitted by one of the defendants, the plaintiff's attorney demanded payment upon the expiration of 60 days after the filing of the proofs of loss and the insurance company's agent advised the plaintiff's attorney a few days later, after consulting with his superiors, that payment was being "withheld" not only by his company but by the other companies as well.   Shortly thereafter, according to the plaintiff's affidavits, which for the purpose of the motion we must accept as true, the defendants "instigated the issuance" of a warrant for the plaintiff's arrest upon a charge of arson.   The plaintiff was arrested on April 10, 1954 and was held for the action of the Grand Jury.

Thereafter, on May 7, 1954 the defendants served for the first time a demand that the plaintiff submit to examination pursuant to the terms of the policy.   The plaintiff's attorney appeared on the adjourned date fixed for the examination and served a statement in writing explaining the reasons for the plaintiff's refusal to submit to examination.   He took the position that the companies had breached the policies by failing to make payment within 60 days and that the plaintiff was therefore relieved of any obligation to comply with the conditions of the policies on his part to be performed.

Subsequently, the plaintiff was indicted for arson and he was ultimately brought to trial.   He took the stand upon the trial and was examined and cross-examined with respect to the origin of the fire.   The jury disagreed and, on motion of the District Attorney, the indictment was dismissed.

Thereafter, actions were instituted against the defendants on the insurance policies and they interposed answers setting up the defense, among others, that the fire had been willfully caused by the plaintiff.   They also set up the defense that the plaintiff had willfully failed to comply with the condition of the insurance policies requiring him to submit to examination and upon the basis of that defense the defendants moved for summary judgment.

It appears from the affidavits submitted by the defendants upon the motion for summary judgment that they had resisted

payment of the plaintiff's claim from the beginning upon the ground that they had reason to believe that the plaintiff had himself caused the fire. Thus it is stated in the affidavit of the attorney for one of the defendants that " [T]he defendant herein had taken a position which it had maintained since information had come to the officers and agents thereof on or about January 12, 1954, that said loss was of a suspicious nature, [and] that there was no insurance due or payable under said policy of insurance ". Long before the defendants sought an examination, they had, according to the affidavits before us, caused the plaintiff's arrest on a charge of arson; at the time of the proposed examination, the prosecution of the plaintiff was pending in the courts.

A jury would have the right to find, under these circumstances, that the defendants' conduct amounted to a repudiation of their liability upon the policies. A jury could reasonably infer from the defendants' conduct that they had no intention of voluntarily paying the plaintiff's claim in any event. A repudiation of liability by an insurance company excuses the insured from further performance on his part of the conditions of the policies. Such a repudiation excuses the filing of proofs of loss, the production of books and documents, the submission to examination, and the taking of any other preliminary steps by the insured (*Sherri* v. *National Sur. Co.*, 243 N. Y. 266, 272–273; *Finkelstein* v. *Equitable Life Assur. Soc.*, 256 App. Div. 593, affd. 281 N. Y. 690; 3 Williston on Contracts [Rev. ed.], § 698A; Restatement, Contracts, § 306; 5 Appleman on Insurance Law and Practice, §§ 3632–3635; 3 Richards on Insurance [5th ed.], § 459; *State ex rel. Continental Ins. Co.* v. *Becker*, 336 Mo. 59; *Jensen* v. *Palatine Ins. Co.*, 81 Neb. 523; *Johnson* v. *National Fire Ins. Co.*, 254 Mich. 126).

If an insurance company refuses to pay a loss under a fire insurance policy on the ground that the insured had caused the loss by his own act of arson, it must justify its refusal upon the ground put forward by it. The insured may sue the company at once and put it to its proof. The insurance company must then stand or fall upon the defense upon which it based its refusal to pay. It may not thereafter attempt to create other grounds for refusal to pay by demanding compliance by the insured with other incidental provisions of the policy with which it had not demanded compliance prior to its repudiation of liability.

If the defendants desire to have an examination of the plaintiff for the purpose of aiding in the preparation of their defense of arson, they may examine the plaintiff under the provisions of

the Civil Practice Act. The plaintiff offered to submit fully to such an examination in his reply affidavit upon the motions for summary judgment.

Apart from the question of the effect of the defendants' repudiation of liability, there is a question of fact as to whether the defendants' request for an examination was a timely one. It may well be found by a jury that the defendants' request for an examination was not made within a reasonable time and that the plaintiff's refusal to submit to examination was therefore justified. A request for an examination under the policy provisions must be made within a reasonable time (7 Couch, Cyclopedia of Insurance Law, § 1539, p. 5488; 3 Richards on Insurance [5th ed.], § 548, p. 1839). In the case of *Aurora Fire Ins. Co.* v. *Johnson* (46 Ind. 315) a request which was made more than 60 days after the filing of the proof of loss and after the commencement of an action against the insurance company was held to be a nullity. In the present case, the demand was made almost four months after the filing of the proofs of loss. An action had been commenced against one of the insurance companies prior to the making of the demand, although this action was subsequently discontinued and new actions instituted against all the insurance companies. Under the circumstances, the question of whether the demand was made within a reasonable time was a question of fact which cannot be disposed of by a motion for summary judgment (cf. *Robertson* v. *New Hampshire Ins. Co.*, 42 N. Y. State Rep. 452, affd. 137 N. Y. 530; *Happy Hank Auction Co.* v. *American Eagle Fire Ins. Co.*, 1 N Y 2d 534, *supra*).

The orders granting summary judgment and the judgments entered thereon should be reversed, with costs, and the defendants' motions for summary judgment should be denied, with $10 costs. The orders appealed from, insofar as they denied the plaintiff's cross motion, should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON and GIBSON, JJ., concur.

Orders granting summary judgment and the judgments entered thereon reversed, with costs, and the defendants' motions for summary judgment denied, with $10 costs. The orders appealed from, insofar as they denied the plaintiff's cross motion, affirmed, without costs.