**Cheryl Perry HILL et al., Plaintiffs-Appellants,**

v.

**A–T–O, INC., et al., Defendants-Appellees.**

**No. 232, Docket 75–7295.**

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1975.

Decided May 10, 1976.

Janet Benshoof, New York City (Brooklyn Legal Services Corp. B., New York City, on the brief, John C. Gray. Jr., Douglas V. Ackerman, Brooklyn, N.Y., of counsel), for plaintiffs-appellants.

Lewis Harris, New York City (Harris, Fredericks & Korobkin, New York City, on the brief, Barry I. Fredericks, New York City, of counsel), for defendant-appellee A–T–O, Inc.

Barton P. Blumberg, New York City (DiFalco, Field & Lomenzo, New York City, on the brief, Joel L. Cohen, New York City, of counsel), for defendants-appellees Family Buying Power. Inc., Nationwide Promotions, Inc., Executive Buying Power, Inc., Family Cleaning Power, Inc., M. Robert Dortch and Frank Dortch.

Irwin M. Berg, New York City (Norman S. Langer, Brooklyn, N.Y., on the brief), for defendants-appellees Compact Associates. Inc., Compact Bellerose, Inc., Compact Electra Corp., and Hyman Sindelman.

Before HAYS, TIMBERS and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

Plaintiffs appeal from two orders of the United States District Court for the Eastern District of New York. The first order, dated March 5, 1975, granted defendants leave to reargue a motion for summary judgment and upon reargument awarded summary judgment dismissing the amended complaint. The second order, dated April 11, 1975, denied plaintiffs' motion for leave to reargue or reamend their amended complaint and General Rule 9(g) statement.

Plaintiffs' class action [1] was commenced in the district court on December 3, 1973 and alleges violations by defendants of the federal antitrust laws. Defendant A–T–O, Inc. ("ATO") manufactures vacuum cleaners and certain vacuum accessories for residential use and sells them in interstate commerce to independent distributors for retail sale. The defendants Family Buying Power, Inc., Nationwide Promotions, Inc., Executive Buying Power, Inc., Family Cleaning Power, Inc., M. Robert Dortch and Frank Dortch (the "FBP defendants") own and operate a quotation and buying service (the "buying service") through which members who pay an annual membership fee obtain a catalogue and quotation sheets which allegedly enables them to purchase various types of merchandise at large discounts. Compact Associates, Inc., Compact Electra Corp., Compact Bellerose, Inc. ., and Hyman Sindelman (the "Compact defendants") are retail distributors which marketed the ATO

---

1. The district court certified the Plaintiff Class in its Memorandum and Order dated January 21, 1975, as being comprised of "all persons who purchased or received a buying service, operated by the Family Buying Power, Inc., defendants together with a vacuum cleaner manufactured by ATO from the Compact defendants during [the relevant time period]." The appropriateness of this certification order was not appealed by the defendants and is not presently before this Court.

vacuum cleaners together with membership in the buying service in the New York City area by means of door-to-door solicitations during certain times alleged in the amended complaint. Plaintiff class consists of purchasers of the vacuum cleaner and membership in the buying service sold to them by the Compact defendants pursuant to written agreements executed during the course of the in-home solicitations.

In the winter of 1967 ATO purchased directly from the FBP defendants membership certificates in the FBP buying service which ATO in turn sold with its vacuum cleaners to the Compact defendants for retail sales. About a year later ATO and FBP terminated their business relationship after the Federal Trade Commission had questioned the propriety of the use of the FBP buying service membership certificates in connection with the sales of the vacuum cleaners. Subsequent to this development the Compact defendants obtained the FBP certificates directly from the FBP defendants and continued to sell them to the ultimate consumers together with the ATO manufactured vacuum cleaners. At all relevant times Compact had an exclusive license to offer the FBP certificates in the New York metropolitan region. It did so only in conjunction with sales of the vacuum cleaners. Prospective customers were told by Compact salesmen that if they agreed to purchase the cleaner they would be given "free of charge" a membership certificate in the FBP buying service. The Compact defendants admit that they never sold memberships in FBP separately from sales of the vacuum cleaner.

This action was brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs' amended complaint set forth two causes of action. First, it is alleged that defendants have agreed to use and have imposed an illegal tying arrangement in the sale of the vacuum cleaners and buying service memberships, the effect of which is unreasonably to restrain interstate trade and commerce in the market for home vacuum cleaners. Second, plaintiffs alleged that defendants conspired to use a selling program consisting of misrepresentation and fraud, and have used such a program for the purpose of restraining interstate commerce in the market for home vacuum cleaners and/or buying service memberships. Plaintiffs seek injunctive relief and treble damages.

On January 21, 1975, the district court denied defendants' motion for summary judgment holding that there were genuine and material issues of fact which could only be resolved at trial. On March 5, 1975, the district court granted the defendants leave to reargue the motion for summary judgment and upon reconsideration reversed its earlier decision of January 21 and awarded summary judgment pursuant to Rule 56, Fed.R.Civ.P. dismissing plaintiffs' amended complaint. In its Memorandum and Order of March 5, 1975, the district court stated that its grant of summary judgment against plaintiffs' first cause of action alleging an illegal tying arrangement was based upon application of this Court's decision in *Capital Temporaries Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658 (2d Cir. 1974). The Court held that neither the amended complaint nor any supporting affidavit or other evidence introduced by plaintiffs had established "actual coercion" on behalf of the defendants with respect to the alleged tie-in. The second cause of action was dismissed on the grounds that it was, in essence, a claim for common law fraud not within the scope of the Sherman Act. We believe the district court misconstrued our decision in *Capital Temporaries* and therefore reverse its grant of summary judgment and remand for trial on the merits of the first cause of action asserting an illegal tying arrangement by defendants.

I.

The standards under which a tying arrangement conditioning the sale of one product upon the purchase of another is deemed to be a *per se* violation of the federal antitrust statutes are well established. *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2

L.Ed.2d 545, 550 (1958) sets forth the two controlling standards.

"For our purposes a tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product . . . . Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed 'tying agreements serve hardly any purpose beyond the suppression of competition.' *Standard Oil Co. of California and Standard Stations v. United States*, 337 U.S. 293, 305–306, [69 S.Ct. 1051, 1058, 93 L.Ed. 1371]. They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons 'tying agreements fare harshly under the laws forbidding restraints of trade.' *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 606, [73 S.Ct. 872, 879, 97 L.Ed. 1277]. *They are unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected. International Salt Co. v. United States*, 332 U.S. 392, [68 S.Ct. 12, 92 L.Ed. 20]." (footnote omitted) (emphasis supplied).

■ The Supreme Court's most recent tie-in decision in *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) elaborated these two *per se* requirements in the context, as here, of a motion for summary judgment. The complaint in *Fortner* charged that in order to obtain certain real estate development loans petitioner had been required to agree to purchase and erect respondent's prefabricated houses. The Court reversed a grant of summary judgment against the petitioner. With respect to the requirement that the defendant exert economic power in the tying product market sufficient to restrain competition in the market for the tied product, the Court held that petitioner's pleadings and affidavits which tended to show that competitors of United States Steel sold comparable prefabricated houses at lower prices and that petitioner had accepted the tying condition "solely because [respondents'] offer to provide 100% financing, lending an amount equal to the full purchase price of the land to be acquired, was unusually and uniquely advantageous to him", 394 U.S. at 504, 89 S.Ct. at 1259, 22 L.Ed.2d at 506, entitled petitioner to go to trial on this issue.[2]

"The standard of 'sufficient economic power' does not, as the District Court held, require that the defendant have a monopoly or even a dominant position throughout the market for the tying product. Our tie-in cases have made unmistakably clear that the economic power over the tying product can be sufficient even though the power falls far short of dominance and even though the power exists only with respect to some of the buyers in the market. . . . As we said in the *Loew's* case, 371 U.S. [38] at 45, [83 S.Ct. 97, at 102, 9 L.Ed.2d 11 at 18]: 'Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes.'" 394 U.S. at 502–03, 89 S.Ct. at 1258, 22 L.Ed.2d at 505.

■ In the present case appellants have made a showing sufficient to entitle them

---

**2.** With respect to the second requirement that a not "insubstantial" amount of commerce in the tied product be involved, *International Salt Co., Inc. v. United States*, 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20, 26 (1947), the *Fortner* Court made clear that all this requires is that the volume of business foreclosed by the tying arrangement not be merely "*de minimis.*" 394 U.S. at 501, 89 S.Ct. at 1257, 22 L.Ed.2d at 503. In the present case defendants do not and could not successfully contend that this *de minimis* requirement has not been met since Plaintiff Class is comprised of over 10,000 purchasers of the Compact vacuum cleaner.

to attempt to prove their allegations of illegal tie-in at trial. *Fortner v. United States Steel Corp., supra. See, Northern Pacific Railway Co. v. United States, supra* ; *Viacom International Inc. v. Tandem Productions, Inc.,* 526 F.2d 593, 597 (2d Cir. 1975); *Coniglio v. Highwood Services, Inc.,* 495 F.2d 1286, 1290–91 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974). *Cf. United States v. Loew's Inc.,* 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 156–59, 68 S.Ct. 915, 928–930, 92 L.Ed. 1260, 1291–1293 (1948); *International Salt Co., Inc. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947). There is an admitted tie between two clearly separate products.[3] *Compare Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 613–14, 73 S.Ct. 872, 883–884, 97 L.Ed. 1277, 1292–1293 (1953). It is undisputed that the only way that membership in the FBP buying service could be obtained in the New York metropolitan region was through purchase of the Compact vacuum cleaner. The Compact defendants held the exclusive franchise to sell the membership certificates in this area and admit that they did so only in conjunction with vacuum cleaner sales. Although defendants contend that membership in the buying service was "free", used solely as a "promotional gimmick" in the sale of vacuum cleaners, we believe this point irrelevant for purposes of tie-in analysis. To hold to the contrary would permit escape from the antitrust proscription against illegal tie-ins by the simple device of offering both products as a unit at a single price, while claiming that one of the two is a "free giveaway."

■ The amended complaint alleges that the FBP defendants exercised the requisite economic power in the market for the tying product to impose an appreciable restraint on free competition in the market for the tied product. *Northern Pacific Railway Co. v. United States, supra,* 356 U.S. at 11, 78

S.Ct. at 521, 2 L.Ed.2d at 553. Appellants introduced evidence purporting to demonstrate that the Compact vacuum cleaner— the tied product—was sold at a price substantially in excess of the price for similar vacuum cleaners and that the alleged tying product—the FBP buying service—was unique and lacked comparable substitutes, therefore tending to indicate market strength. *See, Fortner v. United States Steel Corp., supra,* 394 U.S. at 505, 89 S.Ct. at 1259, 22 L.Ed.2d at 506. These allegations and the evidence submitted by plaintiffs together with the defendants' corresponding denials raise material factual questions which cannot be properly disposed of on a motion for summary judgment. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Jaroslawicz v. Seedman,* 528 F.2d 727, 731–32 (2d Cir. 1975); *American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272 (2d Cir. 1967). It is fundamental that "[o]n summary judgment the inferences to be drawn from the underlying facts contained in such materials [affidavits, exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962) (*per curiam*). We hold therefore that on the current state of the record summary judgment was inappropriate as the district court recognized in its original order of January 21, 1975 denying the defendants' motion. *See Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71–2 (2d Cir. 1971).

■ We note, however, that we do not accept plaintiffs' apparent argument that fraudulent or exaggerated statements by the Compact salesmen concerning the value of the FBP membership plan by themselves can create the "uniqueness" or "desirability" that might arise from actual economic power in the tying product market. *See*

---

**3.** Since the FBP buying service is not a "commodity" within the meaning of section 3 of the Clayton Act that provision is inapplicable. *See, e. g., Advance Business Systems & Supply*

*Co. v. SCM Corp.,* 415 F.2d 55, 64 (4th Cir. 1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970).

*Fortner v. United States Steel Corp., supra,* 394 U.S. at 505, 89 S.Ct. at 1259, 22 L.Ed.2d at 506. In order to prevail on a *per se* theory of liability plaintiffs at trial must demonstrate that actual economic power was exerted by defendants in the relevant buying plan market since "where the seller has no control or dominance over the tying product so that it does not represent an effectual weapon to pressure buyers into taking the tied item any restraint of trade attributable to such tying arrangements would obviously be insignificant at most." *Northern Pacific Railway Co. v. United States, supra,* 356 U.S. at 6, 78 S.Ct. at 519, 2 L.Ed.2d at 550. If it develops that competing buying services of comparable value to the FBP plan were readily available to plaintiffs or that the true value of the FBP plan in relation to that of the vacuum cleaner is such as to make it implausible that any consumer would buy the tied product in order to obtain the "free" membership certificate no antitrust violation exists. These are issues that can only be resolved by a fuller fact-finding process than has taken place to date.

## II.

The district court held that its grant of summary judgment dismissing plaintiffs' claim of illegal tie-in was compelled by this Court's decision in *Capital Temporaries, Inc. of Hartford v. Olsten Corp.,* 506 F.2d 658 (2d Cir. 1974) because plaintiffs had failed to make any assertions which if proved would establish "actual coercion" on behalf of the defendants in the sale of the tied products. We disagree.

In *Capital Temporaries* plaintiff-franchisee of defendant-franchisor's temporary personnel service alleged that in order to obtain an exclusive license from defendant to operate an office-personnel franchise (the tying product), he was required also to agree to establish and operate a non-office personnel or "blue collar" franchise (the tied product) against his wishes. Plaintiff argued that since the tying service franchised to him was trademarked the defendant's requisite economic power over the ty-

ing product market under the *Northern Pacific-Fortner* standards had to be presumed. The Court rejected this proposition holding that "a trademark *qua* trademark is not a sufficient indication of dominance over the tying product to qualify for per se treatment under the *Northern Pacific* rubric." 506 F.2d at 663. In the instant case appellants have raised a genuine factual issue of the defendants' economic power in the market for buying services through introduction of affidavits and a market study which purport to demonstrate the FBP plan's unique nature and the lack of comparable competing services in the New York metropolitan region. Furthermore, unlike the situation in *Capital Temporaries* where plaintiff offered no evidence to suggest that he was only interested in obtaining the office personnel franchise or that he objected to taking the "blue collar" franchise at the time the license arrangements were made, 506 F.2d at 666, several appellants in the instant case introduced affidavits stating that they were already the owners of satisfactory vacuum cleaners before entering into contracts with the Compact defendants and were forced to purchase new Compact cleaners in order to obtain the desired membership in the FBP buying service. Moreover, while the *Capital Temporaries'* "plaintiff ha[d] not even established any tie-in" 506 F.2d at 664, here defendants admit to a policy of never offering the FBP buying plan membership separately from the sale of the Compact cleaner. An unremitting policy of tie-in, if accompanied by sufficient market power in the tying product to appreciably restrain competition in the market for the tied product constitutes the requisite coercion under *Capital Temporaries,* given foreclosure of a not insubstantial volume of interstate commerce. *See, e. g., Fortner v. United States Steel Corp., supra; Northern Pacific Railway Co. v. United States, supra.*

## III.

The district court properly dismissed plaintiffs' second cause of action which claimed that defendants, through the use of

fraudulent misrepresentations concerning the Compact vacuum cleaner and FBP buying service, intended to and did restrain interstate trade in those items in violation of Section 1 of the Sherman Act since defendants knew that others would be unable to compete with them insofar as fraudulent sales practices are unlawful under applicable state and federal statues. It is clear that the foregoing fails to state a claim cognizable under the federal antitrust statutes and plaintiffs apparently do not press this argument on appeal. *See, Hunt v. Crumboch*, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954, 1957 (1945) ("[The Sherman Act] does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."); *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 512–13, 60 S.Ct. 982, 1002, 84 L.Ed. 1311, 1333–34 (1940); *Norville v. Globe Oil & Refining Co.*, 303 F.2d 281 (7th Cir. 1962).

GURFEIN, Circuit Judge (concurring):

I do not believe that this is really a tie-in antitrust case. Since it is on an appeal from the granting of a summary judgment, however, I concur with some reluctance since there may conceivably be some state of facts, although I do not see it clearly, under which this could spell out a claim for relief. As it looks now, this case is no different from the giving of premiums like a set of dishes to persons who patronize a motion picture theatre.

As a matter of fact, the plaintiffs do not claim that the tying service actually gave a benefit to the purchaser of the vacuum cleaner but rather that it was part of a fraudulent scheme. We should be reluctant to permit fraud cases, without proper diversity of citizenship, to become antitrust cases so as to found a nebulous antitrust claim for relief.