DO–RE KNIT, INC., Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
Pennsylvania, Defendant.

No. 79 C 1972.

United States District Court,
E. D. New York.

June 27, 1980.

Ira M. Myers, New York City, for plaintiff.

Greenhill, Speyer & Thurm by John M. Speyer, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This diversity action for damages for nonpayment under a policy of fire insurance is now before the court on defendant National Union Fire Insurance Company's ("NUFI") motion for summary judgment pursuant to Rule 56, F.R.Civ.P. The record reveals the following undisputed facts. NUFI issued a policy of fire insurance to plaintiff Do-Re Knit, Inc. ("Do-Re") covering its business premises at 963 Kent Avenue, Brooklyn, New York. The policy was in effect on May 12, 1979, when a fire occurred at the insured location. On May 16, 1979, a meeting among the defendant's attorney, an independent insurance adjuster and a fire causation expert retained by defendant, a public adjuster retained by plaintiff, and the president of Do-Re took place at the Do-Re plant.

The fire causation expert informed the others, after a preliminary investigation, that the fire appeared to be of incendiary origin. Plaintiff's representatives were requested to furnish defendant with all of Do-Re's books and records in accordance with the terms of the insurance policy. The next day, defendant's adjuster received from plaintiff's adjuster a list of furniture and fixtures alleged to have been damaged by the fire. On May 21, 1979, a certified public accountant employed by the accounting firm retained by defendant to conduct an audit of the books of the insured contacted plaintiff's adjuster for the purpose of scheduling an audit, but was told that an audit could not yet be arranged. The accountant renewed his request on behalf of the defendant on July 3, 1979 and July 19, 1979, but was refused the opportunity to

schedule an audit each time. On July 30, 1979, more than sixty days after the fire, plaintiff commenced this action. The following day, defendant made a formal demand for proofs of loss, furnishing plaintiff suitable blank forms, and requested that a representative of plaintiff submit to an oral examination under oath. Subsequently, plaintiff's attorney informed defendant that plaintiff would not submit to examination under oath. No submission of proofs of loss was ever made by plaintiff.

The complaint alleges that the insurer repudiated the insured's claim under the policy, and that such conduct relieved the insured of its duty to further perform any of the policy's conditions. NUFI, on the other hand, claims in its answer and memorandum that plaintiff materially breached the insurance contract by failing to furnish books and records and by failing to submit to examination under oath and to provide proofs of loss. These breaches, NUFI asserts, bar any recovery by the insured based on the policy, and require the granting of summary judgment in its favor. For the reasons discussed hereafter, NUFI's motion is granted.

■ Summary judgment may be rendered only if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. In determining whether or not a motion for summary judgment should be granted, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American B'casting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972), quoted in *Securities & Exch. Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.*, 535 F.2d 1349, 1354 (2d

Cir. 1976), and resolve any doubts in favor of the opposing party, *American Mfrs. Mut. Ins. Co. v. American B'casting-Paramount Theatres, Inc., supra.*

"The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv. Comm. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). And, as the Court of Appeals for the Second Circuit stated:

"Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. See *Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 187–88 (2d Cir. 1978), *cert. denied*, 439 U.S. 861, [99 S.Ct. 181, 58 L.Ed.2d 169] (1979). The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

■ Under New York law applicable to this action, see *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 15 U.S.C. § 1012 (1976), if an insurer declines a claim or denies liability, the insured is relieved of the duty to satisfy the conditions precedent to recovery under the policy. *Beckley v. Otsego County Farmers Coop. Fire Ins. Co.*, 3 A.D.2d 190, 159 N.Y. S.2d 270, 274 (3d Dept. 1957); *Sherri v. National Surety Co.*, 243 N.Y. 266, 272–73, 153 N.E. 70, 71–72 (1926). However, the "standard fire insurance policy of the state of New York," the exclusive contract of fire insurance on property in New York as required by section 168(2) of the N.Y. Ins. Law (McKinney 1966), states that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements

of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." Section 168, subd. 5, lines 157–61, N.Y. Ins. Law (McKinney Supp. 27, 1979–80). One of the requirements of the policy is that "[t]he insured, as often as may be reasonably required, . . . shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if originals be lost . . . ." Section 168, subd. 5, lines 113–120, N.Y. Ins. Law (McKinney Supp. 27, 1979–80).

Whether this suit is sustainable thus hinges on the question of whether the insurer repudiated the claim of the insured prior to the insurer's demand upon Do-Re for performance of policy conditions, since defendant alleges that plaintiff failed to furnish books and records as requested and failed to submit proofs of loss,[1] and that these failures constitute a material breach of the insurance contract. See *Mortgagee Affiliates Corp. v. Commercial Union Ins. Co. of N.Y.*, 27 A.D.2d 119, 276 N.Y.S.2d 404, 407 (2d Dept. 1967); *Restina v. Aetna Casualty & Surety Co.*, 61 Misc.2d 574, 306 N.Y.S.2d 219, 223 (Sup.Ct.Spec.T. Schenectady County 1969). In the circumstances of this case, the court concludes as a matter of law that the conclusory statements appearing verbatim in the affidavits of Abraham Stern, an officer of Do-Re, and Arthur Bergman, a tenant at the insured premises, are wholly insufficient to raise a triable issue of fact as to whether or not NUFI repudiated Do-Re's claim prior to NUFI's requests for performance.[2]

■ While *Beckley v. Otsego County Farmers Coop. Fire Ins. Co., supra,* does hold that an insurer's conduct can amount to a repudiation of its liability under a policy relieving the insured of obligations under the policy, 159 N.Y.S.2d at 274, the facts of that case are fundamentally different from the undenied facts before this court. In *Beckley,* the insured demanded payment when the sixty-day period following the insured's filing of proofs of loss had expired, and the insurance company's agent responded that payment was being "withheld." *Id.* 159 N.Y.S.2d at 273. Shortly thereafter, the insurer "instigated the issuance" of a warrant for the plaintiff's arrest on a charge of arson. The plaintiff was indicted for arson and brought to trial, but on motion of the District Attorney the indictment was dismissed. In the action commenced against the insurer on the policies, the court found from the affidavits submitted by the insurer that the insurer had resisted payment from the beginning, and it reversed the trial court's granting of summary judgment for the insurer.

■ In sharp contrast to the facts in *Beckley,* the affidavits submitted by the insurer here show that four days after the fire an attorney, adjuster, accounting firm, and fire expert were retained by NUFI. Employees of these firms immediately began and thereafter continued until at least July 19, 1979, their efforts to obtain information from the plaintiff in connection with the fire as expressly permitted by sec-

---

1. These allegations are not contradicted by plaintiff. NUFI has submitted a statement pursuant to Rule 9(g) of the Rules of the United States District Court for the Eastern District of New York which has not been controverted by an opposing statement by Do-Re, and this statement alleges that books and records were requested by NUFI shortly after the fire and at later times but were never made available to NUFI. Consequently, these material facts are deemed admitted. Rules of the United States District Court for the Eastern District of New York (Clark, Boardman 1978) are promulgated pursuant to the rulemaking power vested in the district courts under 28 U.S.C. § 2071 (1959).

2. The paragraph in question reads as follows:

"From these conversations [with defendant's attorney, fire causation investigator, and insurance adjuster] and from other investigation on my part it was clearly communicated to me and I was told and was left with the distinct impression that the defendant had decided that it had a defense of arson' herein and a defense of alleged policy warranties with regard to the sprinkler system on the premises and with regard to the amount of loss claimed. I was made to understand and be informed that the defendant would not voluntarily pay this claim as presented. What the defendant was in fact doing was attempting to prepare its defense as far as possible."

tion 168, subd. 5, of the N.Y. Ins. Law (McKinney Supp. 27, 1979–80). Except for the inventory of furniture and fixtures claimed to have been damaged in the fire submitted to NUFI on May 17, 1979, by the public adjuster retained by Do-Re, no books or records were made available and no proofs of loss were filed. No audit of the books was ever conducted. The sequence of events, moreover, reveals that shortly after Stern claims to have formed his belief that defendant would not pay on the policy, NUFI demanded production of plaintiff's books and records and repeatedly attempted to schedule an audit. This conduct was clearly inconsistent with a repudiation of liability, and nothing in the record lends factual support to plaintiff's "impression" or suggests defendant's actions were not undertaken for the purpose of good faith investigation of plaintiff's claim.

■ The affidavits of defendant's attorney and fire expert, taken together with defendant's answer and uncontroverted Rule 9(g) statement, establish that plaintiff's claim was not denied by any agent of the defendant prior to its demand for performance of the policy conditions. Stern's naked allegation, without more, cannot suffice to raise a "genuine" issue of fact, see *Dressler v. M.V. Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir. 1971), since Rule 56(e), F.R.Civ.P., provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not *so respond*, summary judgment, if appropriate, shall be entered against him." (Emphasis added.) Plaintiff's response to the specific claims sworn to by representatives of the defendant is insufficient to forestall summary judgment.

■ Plaintiff's alternative assertion that there has been an "implied declination" of its claim by the defendant because de-

mand for performance of conditions under the policy was not made within sixty days after the fire is untenable. First, the record reveals without contradiction that demand for production of books and records occurred during the week immediately following the fire. Second, under the terms of the policy, the burden of submitting proofs of loss within sixty days after the loss rests in the first instance on the insured. Section 168, subd. 5, lines 97–99, N.Y. Ins. Law (McKinney Supp. 27, 1979–80). The duty of an insurer to pay under a policy of insurance arises only after proofs of loss have been received by such insurer. *Id.* at lines 150–56; *Mass v. Great American Ins. Co.*, 33 A.D.2d 912, 307 N.Y.S.2d 604, 606 (2d Dept. 1970). Here, the insured never submitted proofs of loss; accordingly, the insurer's duty to pay was never triggered.

■ Plaintiff offers a tortured construction of section 172 of the N.Y. Ins. Law to demonstrate that "no proof of loss need be furnished by an insured unless the same is formally demanded by the insurer" and that failure to make a formal demand within sixty days following loss results in an "implied declination" of the claim. (Affirmation of Ira M. Myer, Esq., dated February 13, 1980.) But section 172 does not state—let alone suggest—such a rule. It simply provides that the failure of an insured to file proofs of loss "shall not be deemed to invalidate . . . any claim of such person" unless "after such loss" the insurer gives written notice that it desires proofs of loss and the insured thereafter fails to submit such proofs. In other words, section 172 preserves the claim of an insured who has not filed proofs of loss within sixty days of the loss, as required under section 168, where the insurer does not make a demand therefor. It does not, however, make a suit "sustainable" over the insurer's objection under section 168, subd. 5, lines 157–61, where proofs of loss have not been filed. ·

■ Nor does plaintiff explain by affidavit, as required by Rule 56(f), F.R.Civ.P., the reasons for its inability to present facts essential to oppose the motion. From the

commencement of the action in July 1979, plaintiff has apparently not attempted to conduct discovery and, in fact, has opposed NUFI's attempts to obtain relevant information as provided under the policy. We have concluded, moreover, that plaintiff's "impression" is unsupported by specific facts and inconsistent with the undisputed sequence of events after the fire. In these circumstances, further discovery directed at whether NUFI had decided to deny Do-Re's claim prior to demanding performance of conditions under the policy would be entirely unavailing. To permit such discovery on the basis of plaintiff's unsupported assertions would require insurance companies to undergo substantial additional litigation costs, in cases like this, associated with their legitimate desire to conduct investigation before either paying on a claim or rejecting it. The court is unwilling to impose this burden on defendant on the present record.

Accordingly, having carefully reviewed the record and upon application of relevant principles of law, the court is satisfied that no genuine issue as to a material fact exists and holds that defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment dismissing the complaint is granted.

SO ORDERED.