**GOULD INVESTORS, L.P., Plaintiff,**

v.

**The GENERAL INSURANCE COMPANY OF TRIESTE & VENICE, Defendant.**

**No. 89 Civ. 4794(CES).**

United States District Court, S.D. New York.

March 28, 1990.

Supplemental Opinion May 15, 1990.

Curtis, Mallet–Prevost, Colt & Mosle by Turner P. Smith, New York City, for plaintiff.

Edwards & Angell by Alfred R. Paliani, New York City, for defendant.

## MEMORANDUM DECISION ORDER

STEWART, District Judge:

In this diversity action, plaintiff Gould Investors, L.P. ("Gould"), sued defendant, The General Insurance Company of Trieste and Venice ("General Insurance"), for an alleged breach of an insurance contract. Defendant now moves for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Factual Background

The plaintiff entered into a General Insurance fire insurance contract bearing number GP2038 (the "Policy") against casualties occurring at 370 Lexington Avenue ("370 Lexington") in New York City. The Policy was for a term to run from September 30, 1987 until September 30, 1988. Plaintiff's coverage under the Policy was subject to a $1,000,000 limit per occurrence with a $10,000 deductible.

The genesis of the instant lawsuit lies in water damage to electrical equipment caused by a broken pipe at 370 Lexington on July 15, 1988. Gould claimed damages under the Policy amounting to $379,359. Defendant's calculations of plaintiff's damages only amounted to $6,300.

The Policy contained provisions required by section 3404 of the New York State Insurance Law.[1] In particular, the Policy stated that:

> The insured, as often as may be reasonably required, shall ... submit to examinations under oath by any person named by this company ... and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers ... at such reasonable time and place as may be designated by this company or its representative.

Further, the Policy stated that no suit on the Policy could be sustained unless the requirements of the Policy were satisfied.

By letter dated January 26, 1989 (the "January 26th letter") defendant's adjusters, RJS Adjustment Corporation, advised plaintiff's adjuster, Brokers Adjustment Company, that since there was a wide discrepancy between the figures, "[u]nder the circumstances, we can give no consideration to your claim presentation unless you wish to provide a more detailed itemized presentation as to how your electrician arrived at $379,359."

On February 17, 1989, defendant requested by letter that plaintiff appear for an examination under oath on March 10, 1989. The letter also consisted of a detailed and lengthy request for documents, including tax returns for the four previous years and any documents relating to any other insurance claims over the previous five years.

Plaintiff requested an adjournment of the examination under oath until April 12, 1989. In addition, plaintiff requested a copy of defendant's expert's report. Defendant agreed to the request and adjournment. The agreement was confirmed by a letter signed by the parties on March 6, 1989. However, the examination under oath did not take place on April 12th because plaintiff did not appear. Plaintiff's in-house counsel, Leon Sena, alleges that on April 10, 1989, he advised the office of defendant's then counsel, Richard Realmuto, that plaintiff would not be able to at-

---

**1.** Formerly section 168 of the New York Insurance Law.

tend the examination. Sena alleges that he was told by Realmuto's office that Realmuto would return his call when Realmuto returned to the office. Realmuto denies that Sena called his office. In any event, it is undisputed that no return call was made by Realmuto agreeing to adjourn the April 12th examination.

On July 13, 1989 plaintiff initiated this action by service on defendant of a summons and complaint. Defendant answered on July 31, 1989. On July 14, 1989, allegedly unaware that plaintiff had instituted an action, defendant's then counsel, Richard Realmuto, scheduled another examination under oath for August 2, 1989. Plaintiff refused to attend that scheduled examination upon advice of counsel.

Defendant argues that the only issue before the court relating to the instant motion is whether plaintiff's "wilful defaults" constitute a material breach of the Policy and a failure of a condition precedent to bring an action under the Policy.

Plaintiff contends that the only issue before the court is whether defendant is entitled to hold an examination under oath after denying the claim.

### Discussion

■ We begin by briefly reviewing the legal principles relevant to summary judgment. Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the nonmoving party, no reasonable trier of fact could find in the nonmoving[*] party's favor. *See Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989). The court must accept as true factual statements in the opposing party's affidavits and draw all permissible inferences in that party's favor. *See Do–Re Knit, Inc. v. National Union Fire Insurance Co.,* 491 F.Supp. 1334, 1336 (E.D. N.Y.1980) (citing *Hill v. A–T–O, Inc.* 535 F.2d 1349, 1354 (2d Cir.1976)). To avoid summary judgment the party against whom summary judgment is sought must come forward with specific facts indicating

there is a genuine issue for trial. *See National Union Fire Insurance Company of Pittsburgh, Pa. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989).

Plaintiff contends that summary judgment should be denied since "[q]uestions of fact exist as to the number of adjournments and whether defendant's counsel's consent to the adjournments constitutes a wilful default." Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief") at 13. We disagree. The only mutual adjournment was the adjournment until April 12, 1989 as memorialized by both parties in the letter of March 6, 1989. There is no other adjournment to which both parties agreed.

Even if we accept plaintiff's naked assertion that it made an April 10, 1989 telephone call to defendant counsel's office asking for an adjournment of the April 12th examination, it is undisputed that the alleged call was unreturned.[2] Accordingly, it is undisputed that defendant's counsel did not expressly agree to adjourn the April 12, 1989 examination and that plaintiff's cancellation of the April 12th examination was unilateral.

We turn therefore to plaintiff's other argument that either the January 26th letter constitutes a denial of liability, or the denials of liability as articulated in defendant's answer to the instant complaint constitutes a denial of plaintiff's claim.

■ We find plaintiff's contention that the January 26th letter constitutes a denial of plaintiff's claim unpersuasive. First, the letter states that consideration of Gould's claim was dependent on plaintiff providing a "more detailed itemized presentation" of how it reached its damage figure. Therefore, we disagree with Gould's assertion that the letter, which neither denied liability nor refused to pay for any loss, constituted an "obvious" and "outright" denial of plaintiff's claim. January 30, 1990 Affidavit of Leon Sena at 3. *Cf.*

---

[*] Editor's Note: The text has been corrected in accord with Footnote 2 of the Supplemental Opinion, *infra.*

**2.** Moreover, there is no suggestion that any further attempt was made by plaintiff's counsel to reach defendant's counsel before or on April 12, 1989.

*Igbara Realty v. New York Property Insurance Underwriting Association,* 63 N.Y.2d 201, 217, 481 N.Y.S.2d 60, 66, 470 N.E.2d 858 (1984) (letter denying all liability and refusing to pay loss is act of repudiation). It is our view that an insurer's good faith investigation of a claim because of its disagreement as to the amount of loss claimed does not constitute a denial of the claim. *Cf. Do–Re Knit, Inc.,* 491 F.Supp. at 1338 (insurer's conduct indicating good faith investigation of claim is inconsistent with repudiation of liability); *232 Broadway Corp. v. Calvert Insurance Company,* 149 A.D.2d 694, 696, 540 N.Y.S.2d 324, 326 (1989) (when there is disagreement as to the amount of loss, insurer not obligated to make payment).

Second, and more significantly, it is obvious that neither plaintiff nor defendant regarded it as a denial of the claim. It is undisputed that in March Gould was preparing for defendant's request for an examination under oath and, as late as April, was examining defendant's expert's report as to the estimated damages in anticipation of the April examination under oath. This conduct is inconsistent with either party believing that the claim had been denied. *See Do–Re Knit, Inc.,* 491 F.Supp. at 1337–38 (efforts to obtain information from plaintiff in connection with fire, insurer's demand for books and records and audit is conduct inconsistent with repudiation of liability). Accordingly, we find that no issue of material fact exists as to whether the January 26th letter constitutes a denial of plaintiff's claim. We hold that it does not.

Plaintiff, citing *Ganz v. Public Service Mutual Insurance Co.,* 551 N.Y.S.2d 437 (N.Y.Sup.Ct.1989), alternatively argues that defendant's answer to the complaint in this action denying liability under the Policy constitutes a repudiation of the claim and excuses further performance under the

Policy. Thus, plaintiff continues, its failure to appear for the scheduled examination under oath on August 2, 1989 is not a breach of the Policy.

■ The duty of an insurer to pay under a policy "arises only after proofs of loss have been received by such insurer." *Do–Re Knit, Inc.,* 491 F.Supp. at 1338.[3] Therefore, the insurer's duty to pay is not triggered and a suit under the policy not sustainable until the insured produces a proof of loss. *Id.* Under certain circumstances a defendant insurer waives the defense of a failure of the insured to file a proof of loss. *See Igbara Realty Corp. v. New York Property Insurance Underwriting Association,* 63 N.Y.2d 201, 217–18, 481 N.Y.S.2d 60, 66, 470 N.E.2d 858 (1984). The decision in *Ganz, supra,* turned on the narrow issue of whether the defendant insurer's answer was interposed before the time to comply with proof of loss had expired. Moreover, *Ganz* was based on an approach taken by the First Department in *Igbara Realty Corp. v. New York Property Insurance Underwriting Association,* 94 A.D.2d 79, 463 N.Y.S.2d 211 (1984), *modified,* 63 N.Y.2d 201, 481 N.Y.S.2d 60, 470 N.E.2d 858 (1984), which was later substantially modified by the New York Court of Appeals.

There is nothing in the papers of either party indicating whether a proof of loss had been filed by plaintiff or formally demanded by defendant. Indeed, the parties do not address proof of loss. Therefore, we do not reach the issue whether defendant's denial of liability in its July 31, 1989 answer to the instant complaint repudiated the claim under the Policy. However, assuming *arguendo* that plaintiff's failure to appear on August 2, 1989 was not a material breach of the Policy, the issue remains whether plaintiff's unilateral cancellation

**3.** The standard fire insurance form mandated by section 3404(e) (formerly section 168) of the New York State Insurance Law requires that the insured, within sixty days of the loss unless extended by the insurer, provide the insurer with sworn written notice of the time and origin of the loss and, *inter alia,* the cash value of each item claimed lost ("proof of loss").

Section 3407 (formerly section 172) provides that failure of the insured to file proof of loss within sixty days of the claimed loss "shall not invalidate or diminish any claim" unless the insurer gives written notice that it desires proofs of loss and provides the insured with appropriate forms. Upon demand, the insured has sixty days, or longer if granted by the insurer, to furnish proofs of loss.

of the April 12th examination constituted a material breach.

■ Failure to comply with a policy provision requiring submission to an examination under oath is a material breach of that policy, precluding recovery under it. *See, e.g., 232 Broadway Corp.*, 149 A.D.2d at 695, 540 N.Y.S.2d at 325 (citing cases). It is undisputed that plaintiff did not attend the examination under oath scheduled for April 12, 1989 without securing defendant's agreement to adjourn it. It is also undisputed that plaintiff made no attempt to reschedule the examination before instituting the instant action, nor does plaintiff satisfactorily explain why it did not attempt to do so.[4] Therefore, there are no material issues of fact relating to whether plaintiff materially breached a provision of the Policy. Plaintiff's unexcused failure to attend the examination under oath scheduled for April 12, 1989 is a material breach of the Policy.

■ However, under New York law summary judgment dismissing the complaint for plaintiff's failure to comply with the provisions of an insurance policy is inappropriate without affording plaintiff a last opportunity to comply with the policy's provisions and cure the breach. *See, e.g., 232 Broadway Corp.*, 149 A.D.2d at 696, 540 N.Y.S.2d at 325; *Catalogue Service of Westchester, Inc. v. Insurance Company of North America*, 74 A.D.2d 837, 837, 425 N.Y.S.2d 635, 637 (1980); *Pogo Holding Corporation v. New York Property Insurance Underwriting Association*, 73 A.D.2d 605, 606, 422 N.Y.S.2d 123, 124 (1979). Accordingly, summary judgment is granted

dismissing the action, unless within forty-five (45) days after the date of the signing of this Order the plaintiff shall comply with the Policy's provisions. Should plaintiff submit to defendant's examination under oath within the period set out by this Order, then defendant's summary judgment motion based on its contention that plaintiff materially breached the Policy by refusing to submit to an examination under oath is denied.

## Conclusion

The motion for summary judgment of defendant General Insurance Company Trieste and Venice is granted, unless within forty-five (45) days of the date of this Order plaintiff, Gould Investors, L.P., complies with the provision of insurance policy number GP2038 requiring plaintiff to submit to examinations under oath.

SO ORDERED.

## SUPPLEMENTAL OPINION

In a Memorandum Decision and Order dated March 28, 1990 (the "March 28th Decision" or "Decision"), this court granted summary judgment to defendant unless the plaintiff within 45 days of the Decision submitted to an examination under oath pursuant to the terms of an insurance policy issued to it by defendant. Plaintiff, pursuant to that Decision, submitted to an examination under oath on May 3, 1990. Accordingly, defendant's motion for summary judgment is denied.

By letters the parties now inform the court that defendant wishes to examine

**4.** Plaintiff's contention that it did not reschedule since the burden to reschedule another examination fell on defendant is unpersuasive. Indeed, the cases suggest that upon the unilateral cancellation of a scheduled examination by the insured the burden is on the insured to offer an alternative future date for the examination. *See Azeem v. Colonial Assurance Company*, 96 A.D.2d 123, 124, 468 N.Y.S.2d 248, 249 (1983) (plaintiff's failure to make any offer to submit to an oral examination after unilaterally cancelling scheduled examination contributed to court's determination that plaintiff failed to perform obligations under insurance contract); *Bulzomi v. New York Central Mutual Fire Insurance Company*, 92 A.D.2d 878, 878, 459 N.Y.S.2d

861, 862 (1983) (plaintiff's failure to set future date for compliance with defendant's notice for examination after unilaterally cancelling contributed to court's determination that record indicated pattern of noncompliance). While we create no rule as to who must reschedule an examination under oath if one party unilaterally cancels, we are of the view that defendant's failure to reschedule under the instant circumstances did not amount to an "outright denial" of the claim. Plaintiff was certainly free to attempt to reschedule particularly given its knowledge that defendant wished to have an examination under oath before deciding whether to pay the claim.

under oath other employees of defendant and have produced by plaintiff other documents relating to maintenance or repairs of the electrical system prior to the loss in question. May 8, 1990 Letter of Kenneth R. Maguire ("Maguire Letter") at 2. Plaintiff asks this court's intervention to prevent defendant from continuing to require plaintiff's attendance at examinations under oath pursuant to the terms of the Policy.[1] It is defendant's view that plaintiff is still required to attend examinations under oath. Maguire Letter at 2. It is plaintiff's view that the appropriate avenue of inquiry by defendant is through discovery. May 8, 1990 Letter of Myrle L. Horvitz ("Horvitz Letter") at 2.

The New York Court of Appeals has stated that an insured cannot insulate itself against cooperation with the terms of a policy by commencing an action before there has in fact been a repudiation of liability by the insurer. *Lentini Bros. Moving & Storage Co. v. New York Property Ins. Underwriting Ass'n*, 53 N.Y.2d 835, 836, 440 N.Y.S.2d 174, 175, 422 N.E.2d 819, 820 (1981). Under the terms of the Policy, no suit on the Policy may be sustained unless its requirements are satisfied. The Policy requires that the insured submit to examinations under oath "as often as may be reasonably required."

In our March 28th Decision we held that there was no issue of material fact as to whether defendant's letter of January 26, 1989 constituted a repudiation of liability.[2] We held that the letter did not repudiate liability and that plaintiff's subsequent failure to attend the April 12, 1989 examination under oath was a material breach of the Policy. However, we allowed plaintiff 45 days to cure the breach.[3]

In that decision we left undecided the issue of whether defendant's answer in this action on July 31, 1989 constituted a repudiation of liability under the Policy such that plaintiff was, as of that date, excused from further performance under the Policy. *See Foreign Credit Corp. v. Aetna Casualty and Surety Co.*, 276 F.Supp. 791, 793–94 (S.D.N.Y.1967) (after insurance company has denied liability on the policy, insured need no longer comply with requirement under policy to submit to examination under oath). The letters from the parties require us now to reach this issue.

We originally viewed the question of whether defendant's answer to the instant complaint constituted a denial of liability only in terms of "proof of loss" requirements. Therefore, we reasoned that since proof of loss issues were not before us and not addressed by the parties we were not required to reach the issue. March 28th Decision at 816–17. Upon reconsideration, we now believe that this analysis was too narrow and the conclusion incorrect.

In *Igbara Realty Corp. v. New York Property Ins. Underwriting Ass'n*, 63 N.Y.2d 201, 217, 481 N.Y.S.2d 60, 67, 470 N.E.2d 858, 865 (1984), the New York Court of Appeals considered whether an insurer should have been denied leave to amend its answer to assert a defense of the

---

1. We continue to use the shortened references as articulated in the March 28th Decision. The basic facts have already been stated in that decision and will not be reiterated here. Familiarity with the facts is assumed.

2. We take this opportunity to correct a typographical error in the March 28th Decision. On page 815 of that decision, citing *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989), we stated that summary judgment was appropriate, when after drawing all favorable inferences of the nonmoving party, "no reasonable trier of fact could find in the moving party's favor." We correct that statement to read "no reasonable trier of fact could find in the *non* moving party's favor."

3. Plaintiff implied in its original moving papers that an eight month delay between the loss and the first scheduled examination under oath constituted a denial of liability. Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 9–10. Even if plaintiff was pressing this issue in its original papers, such an argument is unpersuasive. *See Ganz v. Public Service Mut. Ins. Co.*, 551 N.Y.S.2d 437, 438 (N.Y.Sup.Ct.1989) (eight month period from date of loss to date of commencement of action cannot be equated as constructive denial of plaintiff's claim). Plaintiff's other argument that defendant's failure to reschedule the April 12, 1989 examination under oath constituted a denial of liability has been addressed in the March 28th Decision. March 28th Decision at 817.

insured's failure to file proofs of loss. The court below had held that the insurer had waived the defense because the insurer had repudiated liability under the policy by alleging various affirmative defenses in its answer to the complaint. In modifying that approach, the Court of Appeals stated that an insured, served with a demand to provide proofs of loss, cannot begin an action so as to require the insurer to answer prior to the expiration of the time for filing proofs, and thereby cut off the insurer's right to assert the defense of the insured's failure to provide proofs of loss. *Igbara*, 63 N.Y.2d at 218, 481 N.Y.S.2d at 66, 470 N.E.2d at 864.

By analogy in this case, an insured, served with a demand for an examination under oath, cannot begin an action requiring the insurer to answer prior to any examination under oath, and thereby cut off the insurer's affirmative defense of the insured's failure to submit to an examination under oath. Indeed, when plaintiff filed this action before defendant denied liability, "defendant had no alternative but to defend." *Lentini Bros. Moving and Storage Co. v. New York Property Ins. Underwriting Ass'n*, 76 A.D.2d 759, 761, 428 N.Y.S.2d 684, 687 (1980), *aff'd*, 53 N.Y.2d 835, 440 N.Y.S.2d 174, 422 N.E.2d 819 (1981).

Plaintiff argued in its original motion papers that since defendant's answer was served prior to the August 2, 1989 examination under oath, the defendant thereby repudiated its liability. However, this argument does not address the fact that plaintiff had unilaterally cancelled the scheduled April 12, 1989 examination under oath months before either the imposition of the complaint or the answer. Accordingly, it is our view that defendant's answer to the instant complaint does not constitute a repudiation of liability such that plaintiff is excused from further performance under the Policy. Indeed, we believe that to allow plaintiff to avoid further compliance with reasonable requests for examinations under oath before there has been a repudiation of liability is precisely the "insulation against cooperation" about which the Court

of Appeals cautioned in *Lentini Bros.*, *supra*. *Lentini Bros.*, 53 N.Y.2d at 836, 440 N.Y.S.2d at 175, 422 N.E.2d at 820 (insured may not insulate itself against cooperation with policy's terms by instituting lawsuit before repudiation of liability by insurer).

Finally, plaintiff urges this court to intervene to prevent defendant from requiring plaintiff to produce documents at other examinations under oath now requested by defendant which are "irrelevant and immaterial" to the plaintiff's insurance claim. Horvitz Letter at 2. Defendant argues that it wishes to examine other witnesses and documents to determine what entity paid for repairs to the electrical system. Maguire Letter at 1.

Wilful refusal to answer material and relevant questions and to supply material and relevant documentation constitutes a breach of the Policy. *See Averbuch v. Home Ins. Co.*, 114 A.D.2d 827, 829, 494 N.Y.S.2d 738, 739 (1985). We agree with defendant that if plaintiff believes that the requested witnesses and documents are unreasonable and irrelevant, it is free to decline to submit to the requested examination under oath. However, such a refusal to submit to the examination under oath risks the assertion of an affirmative defense by defendants of plaintiff's failure to cooperate under the terms of the Policy. Accordingly, we decline to intervene.

SO ORDERED.