661 F.2d 264
 H. S. EQUITIES, INC., Plaintiff-Appellant Cross-Appellee,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant and Third
Party Plaintiff-Appellee-Cross-Appellant,
v.
Joseph DECKER, Third-Party Defendant-Appellee.
 Nos. 836,965, Dockets 80-7814, 80-7892.
 United States Court of Appeals,
Second Circuit.
 Argued June 3, 1981.
Decided Oct. 1, 1981.
 
 1
 Wien, Lane & Malkan, New York City (Robert G. Desmond, and Wayne R. Lehrhaupt, New York City, of counsel), for plaintiff-appellant-cross-appellee.
 
 
 2
 Bigham, Englar, Jones & Houston, New York City (Thomas R. Pattison, and Peter Broeman, New York City, of counsel), for appellee-cross-appellant and third party plaintiff.
 
 
 3
 Alfred C. Purello, Albany, N. Y., for third party defendant-appellee.
 
 
 4
 Before TIMBERS and WATERMAN, Circuit Judges, and LASKER, District Judge.*
 
 
 5
 LASKER, District Judge.
 
 
 6
 HS Equities, Inc. (HS) appeals from a judgment entered after a bench trial before the United States District Court for the Southern District of New York (Metzner, District Judge)[1] in which it was awarded $64,512.90 and interest on its claim for $130,000. asserted against Hartford Accident and Indemnity Company (Hartford), and from a post-trial order denying its motion to amend the findings of fact by increasing the award. In addition, HS appeals from an order granting Hartford summary judgment on HS' separate claim for $49,730.61, for attorney's fees and costs.
 
 
 7
 Hartford cross appeals from the judgment of the district court awarding HS $64,512.90 and interest and from the dismissal of Hartford's third-party complaint against Joseph Decker (Decker), as well as from the order denying its claim that HS' action was not commenced within the contractual period of limitation.
 
 I.
 
 8
 HS brought this action to recover, under a blanket brokers bond (the Bond) issued by Hartford, the sum of $130,000. paid by HS in settlement of actions brought against HS and Decker, its registered representative, and for attorney's fees. The Bond, which Hartford issued to HS[2] in 1967, covered "(a)ny loss through any dishonest, fraudulent or criminal act of any of the Employees...." In addition, it separately provided for indemnification against court costs and reasonable attorneys fees incurred and paid by Hartford in defending against a claim which, if established, would constitute a collectible loss under the Bond. In consideration for this provision, HS agreed that it would "promptly give notice to (Hartford) of the institution of any such suit or legal proceeding" and that Hartford could undertake defense of the suit if it elected to do so. The Bond required that a suit under the Bond must be "begun within twenty-four months after (HS) shall learn of such loss...."[3]
 
 
 9
 The earlier action for which HS seeks indemnity was instituted in the fall of 1970 by two customers of HS, the Draicchios, on account of alleged violations of the antifraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 and breaches of common-law fiduciary duties. The Draicchios charged that their accounts had been churned, that unauthorized trading had taken place, that unsuitable securities had been purchased for their accounts, that HS and Decker had engaged in self-dealing, and that a series of margin violations had occurred. They sought over $225,000. in actual damages and $350,000. in exemplary damages and attorneys fees.
 
 
 10
 On August 11, 1971, HS gave notice to Hartford of the pendency of the Draicchio suits and forwarded copies of the Draicchios' complaints to Hartford. Hartford declined to undertake the defense of the actions. On June 25, 1975, HS notified Hartford that the cases had been consolidated for trial on July 25, 1975, and that HS had refused a settlement demand of $155,000. by the Draicchios. At that time, HS invited Hartford to participate in settlement discussions and inquired if Hartford objected to HS settling the suits. Hartford responded that since it had elected not to defend the suits, it would neither approve nor disapprove the settlement and that a settlement would not prejudice HS' rights to proceed under the Bond but that this statement did not constitute a waiver by Hartford of any defenses it had under the Bond.
 
 
 11
 The Draicchio trial began on July 25, 1975. After a week of trial principally devoted to Mr. Draicchio's direct testimony, the trial was adjourned for the weekend and the court suggested that counsel further consider settlement. The following Monday morning settlement was reached. HS agreed to pay the Draicchios $130,000. on account of all claims against HS and Decker.
 
 
 12
 Decker, who was represented by the same counsel as HS, did not contribute to the settlement, HS had secured counsel to represent Decker and itself, paid all legal fees, and paid Decker's expenses in connection with the suit. Decker voiced satisfaction with the settlement and was told by counsel that he could return home. Decker was not informed that as a result of the settlement he might be sued by Hartford if Hartford was called to pay under the Bond, and HS did not execute a release in favor of Decker. Thereafter, HS paid the settlement and stipulations of dismissal were executed on August 5, 1975.
 
 
 13
 On August 5, 1975, HS advised Hartford of the settlement and demanded reimbursement for the $130,000. as well as $42,530.61 in attorneys fees and $2,200. in expert witness fees. HS returned a completed proof of loss form to Hartford on September 4, 1975, for these amounts. After discussions between HS and Hartford, Hartford denied the claim in writing on December 11, 1975 on the ground that there was no evidence of Decker's dishonesty.
 
 
 14
 In July, 1977, HS filed its complaint in the present action to enforce Hartford's asserted liability under the Bond. Hartford answered and filed a third-party complaint against Decker alleging that it was entitled to judgment against Decker for any amount for which it might be found to be liable to HS. All parties then moved for summary judgment. In an opinion dated October 17, 1978, the district court denied the motions except for that portion of Hartford's motion for summary judgment dismissing HS' claim for reimbursement of attorneys fees and litigation expenses. The district court held that HS' nine month delay in informing Hartford of the institution of the Draicchio suits did not comply with the prompt notice requirement of the attorneys fees provision of the Bond and that Hartford had not waived the notice provisions by denying liability under the Bond for the actions.
 
 
 15
 A bench trial was held in May, 1980, and the district court filed its findings of fact and conclusions of law on June 23, 1980. It found that the settlement of the Draicchio actions had been in good faith and that Hartford had been accorded a reasonable opportunity to defend the actions and had declined to do so. Relying on Feuer v. Menkes Feuer, Inc., 8 A.D.2d 294, 187 N.Y.S.2d 116 (1959) and other New York decisions, it held that the settlement conclusively established Hartford's liability under the Bond for the portion of the settlement attributable to the claims that Decker had committed fraudulent or dishonest acts. The district court determined that $65,000. of the settlement was attributable solely to HS' liability for margin violations and that the remainder was attributable to the allegations of Decker's misconduct.
 
 
 16
 In addition, the district court dismissed Hartford's claim against Decker. It held that Decker would have a defense against a claim by HS to recover any part of the loss allegedly due to his misconduct because HS was responsible for the conflict of interest in the representation of Decker in the Draicchio actions and had failed to protect his interests by providing him a release from HS. Since Hartford's rights against Decker could be no greater than HS' rights against Decker, the district court concluded that Hartford could not maintain its claims against Decker. It held further that Hartford's inability to proceed against Decker did not constitute an impairment by HS of Hartford's right of subrogation since Hartford's refusal to defend the Draicchio actions had the same effect as a denial of liability under the Bond, which in turn constituted a waiver by Hartford of the defense of impairment of subrogation rights.[4] HS appeals from the district court's decision on the grounds that it was entitled to the full $130,000. settlement sum and that it was improper to grant Hartford summary judgment of HS' claim for indemnification of attorney's fees. Hartford argues that liability under the Bond was never established and that its claim against Decker should not have been dismissed.
 
 II.
 
 17
 We consider first the threshold issue whether Hartford was liable to HS under the bond. In an action involving the same bond as at issue here, HS Equities, Inc. v. Hartford Accident and Indemnification Company, 609 F.2d 669 (2d Cir. 1979) ("Michael"), we read the New York law on the subject to be that when an indemnitor has been accorded a reasonable opportunity to defend a third-party action against the indemnitee and declines, the good-faith settlement of the third-party claim by the indemnitee is presumptive evidence of the facts alleged in the third-party complaint. Thereafter the indemnitor has the burden successfully to contest this presumptive evidence in the action for indemnification. 609 F.2d at 674-75. We specifically rejected the proposition that such a settlement constituted conclusive evidence of the facts upon which it was based. 609 F.2d at 674 n.8. Since, in Michael, Hartford had never advanced Michael's innocence as a defense to its liability to HS under the Bond, we held that it had failed to overcome the presumptive effect of the good-faith settlement of the third-party suits and that it was therefore unnecessary for the trial court to determine whether the allegations of misconduct on the part of Michael were true.
 
 
 18
 Hartford contends that in this case the district court erred by finding Hartford liable on the Bond without finding as a matter of fact that the settlement was made because of Decker's "dishonest, fraudulent or criminal acts" within the meaning of the Bond. Hartford argues that, while it introduced evidence at trial that Decker was innocent of the misconduct alleged in the Draicchio complaints, HS introduced no evidence of Decker's misconduct and even declared on the record that it was not taking the position that Decker had in fact acted fraudulently or dishonestly. It follows, according to Hartford, that it was never established that there was a loss encompassed by the terms of the Bond.
 
 
 19
 Hartford next argues that the district court should not have applied the presumption discussed in Michael because here, unlike Michael, there had been no finding that Hartford had denied liability under the Bond. Hartford contends that, since it had a contractual right to decline to defend third-party suits, its decision not to defend should not result in a presumption against it. Hartford further contends that even if the Michael presumption does apply when the indemnitor has not denied liability, the district court failed to adhere to Michael because it treated the Draicchio settlement as conclusive rather than rebuttable evidence of Decker's misconduct. In any event, Hartford maintains that we misread the relevant New York law in Michael and that no presumption should apply here because the bond in question is not a broad indemnity bond but comes into effect only when particular acts or misconduct in fact produce a loss to the insured.
 
 
 20
 HS responds that the issue whether Hartford denied liability under the Bond is irrelevant to the determination of the effect of the settlement of the Draicchio actions under the relevant New York law. Moreover, HS asserts that the opinion in Michael misread the New York law on the effect of a good-faith settlement on a later action for indemnification. According to HS, it is firmly established by New York decisions that, if the indemnitor is given notice of the third party suit and a reasonable opportunity to defend and declines to do so, any reasonable, good-faith settlement entered into by the indemnitor is conclusive evidence of the facts alleged in the third-party complaint in the later action for indemnification. It follows, HS says, that it was not required to establish in the district court that Decker had acted fraudulently or dishonestly, but only that Hartford declined to defend and that the settlement was entered into in good faith. Since the district court found these facts, HS contends that it properly accorded the settlement of the Draicchio actions conclusive effect against Hartford.
 
 
 21
 The finding that Hartford is liable to HS under the Bond for the portion of the settlement of the Draicchio actions attributable to allegations of Decker's misconduct is reversed. We believe that the district court failed to apply our holding in Michael and treated the good-faith settlement of the Draicchio actions as conclusive evidence of Decker's wrongdoing in this indemnification action. Under Michael, the settlement of the Draicchio suit constituted only presumptive evidence which Hartford was entitled to contest. Here, unlike Michael, Hartford introduced substantial evidence that Decker was innocent of any wrongdoing. HS took the position that Decker's innocence or guilt was, in light of Hartford's decision not to defend, irrelevant to Hartford's liability under the Bond. The trial court incorrectly agreed with HS and therefore failed to determine whether Hartford had overcome the presumption created by the settlement, whether HS was obliged to submit proof of Decker's misconduct, and whether Decker in fact was guilty of the allegations in the Draicchios' complaints. Accordingly, the case must be remanded to the district court to hear the evidence and make the determinations which it omitted.[5]
 
 
 22
 We do not agree with Hartford, however, that the presumption discussed in Michael depends upon a finding that Hartford denied liability under the bond prior to the time of settlement. While in Michael Hartford had actually denied liability, and we noted that fact in our discussion of the effect of the prior settlement in the indemnification action, our analysis of the New York law did not conclude that a denial of liability is a precondition to the application of the presumption. See Michael, supra, at 674 n.8.
 
 III.
 
 23
 HS contends that the district court erred in granting Hartford summary judgment on HS' claim for reimbursement of attorneys fees and litigation expenses. HS argues first that Hartford's assertion that third-party customer suits did not come within the coverage of the Bond relieved HS from the obligation under the attorneys' fees provision of the Bond promptly to notify Hartford of any such suit. In its opposition to Hartford's summary judgment motion, HS had submitted the affidavit of Robert J. Poulson, HS' present general counsel who in 1969 was employed on its legal staff, which HS asserts established that Hartford had taken the position that customer suits were not within the Bond's coverage. HS argues that the trial court misconstrued the affidavit as merely establishing HS' denial of liability in a particular case. HS emphasizes that the same denial of liability was referred to in Michael as constituting a denial of liability for customer suits in general. Moreover, HS argues that, as a result of the findings of fact in Michael, Hartford is collaterally estopped from asserting that it did not deny liability for customer fraud suits in early 1970. Finally, HS contends that even if the district court were correct that Hartford had not denied liability under the Bond, it still erred in granting summary judgment on the attorneys fees claim because the question whether HS promptly informed Hartford of the Draicchio actions constituted a genuine issue of material fact precluding summary judgment.
 
 
 24
 Hartford responds that the district court properly determined that a delay of nine months was unreasonable as a matter of law and therefore violated the contractual requirement that HS notify Hartford promptly of suits against it. Hartford emphasizes that HS submitted no evidence in opposition to the motion for summary judgment which established an excuse for the delay in notice. Moreover, Hartford stresses that the issue of Hartford's alleged denial of liability was considered at trial and that the district court found that there was no denial of liability since HS had in fact notified Hartford of the suits, albeit belatedly. According to Hartford, the district court found HS' belated notice to be inconsistent with HS' position that HS believed that Hartford had previously denied liability. Hartford also argues that the denial of liability found in Michael was limited to churning claims and that HS had been informed in 1970 that Hartford would consider its position with respect to the Bond's coverage as each particular customer suit was brought to its attention.
 
 
 25
 The order granting Hartford summary judgment on HS' claims for attorneys fees and litigation expenses is reversed. It is established that a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy. See, e. g., Rock Transport Properties, Corp. v. Hartford Fire Insurance Company, 433 F.2d 152, 154 (2d Cir. 1970); Beckley v. Otesco County Farmers Cooperative Fire Insurance Company, 3 A.D.2d 190, 195, 159 N.Y.S.2d 270 (3d Dept. 1957); Shapiro v. Employers' Liability Assurance Corp., 139 Misc. 454, 248 N.Y.S. 587 (Sup.Ct.Bronx Co. 1931). In Michael, we upheld the district court's finding that Hartford's expression of its general position that third-party customer suits were not encompassed within the terms of the fidelity bond, along with varied justifications for that position, was the equivalent of a denial of liability in the third-party suit at issue. Michael, supra, 609 F.2d at 673. In the present case, HS had submitted an affidavit of Robert J. Poulson which stated that in 1969 Hartford had informed HS of its general position that securities fraud claims arising out of customer suits were not covered by the Bond.
 
 
 26
 We agree with HS that this affidavit can only be construed to relate to a general denial of liability by Hartford applicable to all customer suits. Accordingly, the Poulson affidavit raised a genuine issue of material fact whether Hartford had actually disclaimed liability under the Bond for all customer suits and whether it had thereby, under Michael, waived its contractual notice rights.[6]
 
 
 27
 Moreover, we agree with HS that Hartford is collaterally estopped from contesting any facts which were decided or stipulated in Michael. However, the scope and duration of the denial of liability found in Michael is not clear from the record before us. Accordingly, on remand the district court should determine if the general denial of liability discussed in Michael encompassed the claims pressed by the Draicchios and, if so, whether Hartford had changed its position before the Draicchio actions were instituted.
 
 IV.
 
 28
 Hartford contends that the district court erred in dismissing its third-party complaint against Decker. We disagree. The district court found that the joint representation of HS and Decker at the Draicchio suits resulted in counsel's failure properly to protect Decker's interests by securing a release from HS in his favor. The evidence supports the district court's conclusion that, had the circumstances been explained to Decker, he would not have consented to the settlement without securing such a release. Since Decker's consent to the settlement depended upon HS' failure to take his interests into account, Decker would have a defense against any action by HS to recover the portion of the settlement attributable to his alleged misconduct. Hartford, standing in the shoes of the subrogor, HS, is subject to the same defense. Great American Insurance Company v. United States, 575 F.2d 1031, 1034 (2d Cir. 1978).
 
 
 29
 Hartford next argues that if the third-party complaint was properly dismissed against Decker, then HS' entire complaint against Hartford should have been dismissed on the ground that HS had impaired Hartford's subrogation rights against Decker. We need not reach this issue at this time. We have remanded the case for a determination whether Hartford had denied liability under the Bond for the claims at issue here. If it is found that Hartford had indeed denied liability, the issue whether HS had impaired Hartford's subrogation rights will be rendered moot. If it is determined that Hartford did not deny liability, the issue whether HS had impaired Hartford's subrogation rights by its actions with respect to Decker or whether Hartford's actions constituted a waiver of its subrogation rights can be determined on a record properly directed to those questions.
 
 V.
 
 30
 The parties' remaining contentions are without merit. The district court's finding that $65,000. of the settlement amount was attributable to margin violations for which HS would be liable is supported by ample evidence in the record and is not clearly erroneous. The district court's finding that the action was begun within the contractual twenty-four month period is consistent with the well-established principle that a contract must be construed in the light of the applicable law at the time the contract was executed, see Battaglia v. General Motors Corp., 169 F.2d 254, 258 (2d Cir. 1948) and that any ambiguity in the Bond must be resolved in favor of the insured. E. g., Filor, Bullard & Smyth v. Insurance Company of North America, 605 F.2d 598 (2d Cir. 1978); State Farm Mutual Auto Insurance Company v. Westlake, 35 N.Y.2d 587, 591, 364 N.Y.S.2d 482, 324, N.E.2d 137 (Ct.App.1974).
 
 
 31
 Reversed in part, affirmed in part and remanded for proceedings consistent with this opinion.
 
 
 
 *
 Morris E. Lasker, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 HS Equities, Inc. v. Hartford Accident and Indemnity Company, 493 F.Supp. 451 (S.D.N.Y.1980)
 
 
 [2]
 HS Equities is the surviving entity of Hayden, Stone Inc. We refer to both entities as "HS"
 
 
 [3]
 The relevant provisions of the Bond are as follows:
 "The losses covered by this Bond are as follows:
 FIDELITY
 (A) Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees.
 COURT COSTS AND ATTORNEYS FEES
 (H)artford will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. Such indemnity shall be in addition to the amount of this bond. In consideration of such indemnity, the Insured shall promptly give notice to (Hartford) of the institution of any such suit or legal proceeding; at request of (Hartford) shall furnish it with copies of all pleadings and other papers therein; and at (Hartford's) election shall permit (Hartford) to conduct the defense of such suit or legal proceeding, in the Insured's name, through attorneys of (Hartford's) own selection.
 LOSS NOTICE PROOF
 LEGAL PROCEEDINGS
 Section 3. The Insured shall give to the Underwriter written notice of any loss under this bond as soon as possible after the Insured shall learn of such loss, and within ninety days after learning of such loss shall file with the Underwriter an itemized proof of claim duly sworn to. The Underwriter shall have thirty days after notice and proof of loss within which to investigate the claim, but where the loss is clear and undisputed, settlement shall be made within forty-eight hours; and this shall apply notwithstanding the loss is made up wholly or in part of securities of which duplicates may be obtained. No action or proceeding shall be brought under this bond in regard to any loss unless begun within twenty-four months after the Insured shall learn of such loss, except that any action or proceeding to recover hereunder on account of any judgment against the Insured in any suit mentioned in the paragraph entitled Court Costs and Attorneys' Fees, or to recover attorney's fees paid in any such suit, shall be begun within twenty-four months from the date upon which the judgment in such suit shall become final, or in case such limitation be void under the law of the place governing the construction hereof, then within the shortest period of limitation permitted by such law."
 
 
 [4]
 After trial, HS moved for an order amending the findings of fact to provide that only $487.10 should be deducted from the $130,000. settlement it paid on the ground that the margin violations alleged by the Draicchios were attributable to Decker's mismanagement of the account rather than to HS. Hartford moved to increase the amount of the settlement attributable to HS. In a decision dated September 3, 1980, the district court reiterated its finding that $65,000. of the settlement was attributable to margin violations for which HS would have been liable and therefore should be deducted from the amount of the settlement for which Hartford was liable under the Bond. The district court also held that an additional $487.10, representing Decker's remaining interest in a profit sharing plan, should be deducted from HS' recovery and that interest should run on the amount awarded to HS
 
 
 [5]
 The arguments of both HS and Hartford that Michael misconstrued the applicable New York law are not properly presented to a panel of this court. See Ingram v. Kumar, 585 F.2d 566 (2d Cir. 1978), cert. denied, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); Lee v. Frozen Food Express, Inc., 592 F.2d 271 (5th Cir. 1979)
 
 
 [6]
 The trial court's decision that Hartford's earlier denial of liability could not be held to apply to customer suits which had not yet been instituted at the time of Hartford's statements was rendered before our opinion in Michael and was therefore without the benefit of our holding that Hartford's general denial of liability for particular claims, coupled with justification for its position, was the legal equivalent of a denial of liability for a particular suit within the scope of the general denial. It is unclear whether the district court's observation at trial that HS' late notice was inconsistent with HS' assertion that it believed Hartford had already denied liability for such suits was intended to constitute a finding that Hartford had not in fact denied liability. If it were so intended, we disagree. HS' belated notice cannot legally or factually serve to estop it from asserting that it had no duty to notify Hartford in the first place because Hartford had waived the prompt notice right by disclaiming liability. HS' motivations in giving notice at a later time are irrelevant to the factual issue whether Hartford had waived notice by denying liability