**PEPSICO, INC., Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 85 Civ. 5518–CLB.**

United States District Court, S.D. New York.

June 23, 1986.

On Motion for Clarification July 30, 1986.

Ronald S. Rolfe, Louis M. Solomon, Jonathan D. Thier, Lawrence M. Rolnick, Cravath Swaine & Moore, New York City, for plaintiff.

Nancy Barton, Dennis Block, Weil Gotshal & Manges, New York City, Stewart Ross, Cathy Simon, Ross, Dixon & Masback, Washington, D.C., for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

Plaintiff PepsiCo, Inc. ("PepsiCo") brought this action against defendant Continental Casualty Company ("Continental") to recover money paid to settle litigation on behalf its officers and directors; it also asserts claims against Continental for fraud and antitrust violations. Continental had issued a policy insuring PepsiCo's directors and officers from certain claims against them. PepsiCo now seeks an interpretation of the underlying policy agreement in the form a partial summary judgment motion. Continental has moved to dismiss various portions of the complaint.

PepsiCo announced to the public in November 1982 that it had discovered "accounting irregularities" in several of its international operations, including Mexico

and the Philippines. Employees in those countries had falsified accounts to improve the apparent performance of their operations. PepsiCo consequently had to restate its consolidated earnings for 1978–1981 and the first three quarters of 1982.

Predictably, several suits under well-known Rule 10b–5 were filed against PepsiCo, its directors and officers, its accounting firm, Arthur Young & Co., and a former officer, Richard Ahern, alleging a "fraud on the market" because of the false financial statements. These suits were consolidated before then Judge Abraham D. Sofaer of this district. The consolidated amended complaint alleged violations on the part of all defendants of Section 10 of the 1934 Securities Act as well as a common law claim for fraud and reckless and negligent misrepresentation. On August 23, 1984, Judge Sofaer certified a class for the Securities Act claim.

In February, 1983 the Securities and Exchange Commission also initiated an investigation into the circumstances of the PepsiCo false financials to determine whether PepsiCo or its directors and officers had violated any of the federal securities laws. As part of this investigation the S.E.C. interviewed PepsiCo officers and managers and partners and employees of Arthur Young & Co. The S.E.C. subsequently charged PepsiCo with violations of certain anti-fraud and reporting provisions of the Securities Act. Mr. Ahern was indicted by a Federal Grand Jury and pled guilty to criminal charges of fraud. He was sentenced in April 1984.

On March 4, 1985 attorneys for PepsiCo, its inside directors and its outside directors reached a tentative settlement agreement with class plaintiffs' counsel. PepsiCo counsel approached Continental seeking its approval of the proposed settlement. When they were unable to reach an accord on the settlement because of time pressures, PepsiCo and Continental entered into a non-waiver agreement. By this agreement Continental obtained the right to review the settlement after the fact but without losing its right under the policy to object to the reasonableness of the settlement.

The Class Action parties entered into a stipulation of settlement on March 15, 1985 and Judge Sofaer approved the settlement as fair, reasonable and adequate on April 26, 1985, after having expressed himself as "shocked, quite surprised at the amount." (Ex.F. Simon affidavit at 10). Under the terms of the settlement, PepsiCo paid $22,-067,754 into a Settlement Fund. In exchange, plaintiffs in each of the actions released all defendants from liability. All of plaintiffs' claims against all defendants, including the non-certified common law or state law claims were dismissed with prejudice.

The Directors and Officers Liability Policy at issue here covered the period July 28, 1981 to July 28, 1984. After extending that coverage for thirty days, PepsiCo and Continental agreed to a new policy for the period August 27, 1984 to August 27, 1987. Both policies included a provision permitting either party to cancel the policy unilaterally. Pursuant to that provision, Continental cancelled the 1984–1987 policy effective June 29, 1985.

*PepsiCo Motion for Summary Judgment*

By its motion for partial summary judgment PepsiCo has asked this Court to make the following four interpretations of the underlying policy. First, that Continental had a contemporaneous duty to pay the defense costs to the directors and officers as they incurred them. Second, that nothing in the directors and officers policy and no public policy precludes reimbursement to PepsiCo for the settlement and defense costs. Third, that Continental cannot pro rate its payments on the directors and officers insurance policy according to relative degrees of liability as between the insured and other defendants including the corporation. Fourth, if Continental is permitted to make some allocation according to degree of fault, then it should bear the burden of proving liability on the part of the corporation itself and Arthur Young.

*Contemporaneous Duty to Pay Defense Costs*

 The parties agreed at the time the policy was issued that a "loss" should include the cost of defending legal actions brought against directors and officers for "Wrongful Acts." The policy definition of Loss states that,

"Loss shall mean any amount which the Directors and Officers are legally obligated to pay for which they are not indemnified by the Company, or for which the Company may be required or permitted by law to pay as indemnity to the Directors and Officers, for a claim or claims made against them for Wrongful Acts, and shall include ... amounts incurred in the defense of legal actions, claims or proceedings and appeals therefrom ..." ¶ III.(d) of Policy, Ex. 1 to Rolfe Affidavit.

The "Wrongful Acts" covered by this policy do not include all tortious acts. According to the policy definition, "Wrongful Acts" means "any actual or alleged error or misstatement or act or omission or neglect or breach of duty by the Directors and Officers in the discharge of their duties ... or any other matter *not excluded by the terms and conditions of this policy* claimed against them solely by reason of their being officers and directors of the Company." ¶ III.(c). of Policy, Ex 1 to Rolfe Affidavit (emphasis added). The policy excludes coverage for any payments "brought about or contributed to by the dishonesty of the Directors or Officers." The policy will cover, however, the costs of defending the directors and officers against alleged dishonesty *"unless a judgment or other final adjudication* thereof adverse to the directors and officers shall establish that acts of active and deliberate dishonesty committed by the Directors and Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated." ¶ IV.(b)(5) of Policy, Ex. 1 to Rolfe Affidavit (emphasis added).

Continental contends that it is not liable for immediate payment to PepsiCo for the directors and officers legal fees because

Paragraph VI of the Policy provides that "no costs, charges or expenses shall be incurred without Underwriters' consent." Continental argues that it could not pay the directors' and officers' legal fees until the conclusion of the litigation because there remained the possibility that a final adjudication would include a finding that the directors or officers had been materially dishonest. Paragraph VI includes a declaration that Continental will pay the amounts due except as limited by the exclusions listed in Paragraph V of the policy.

Although this language would have entitled Continental to reimbursement of payments for the defense costs of directors and officers adjudicated as dishonest, it does not excuse Continental from its obligation to pay the defense costs as they are incurred. First, under the policy, entry of final judgment is not a prerequisite to payment of defense costs. The policy definition of loss includes amounts incurred in the defense of all allegations of wrongdoing and dishonesty. Thus, the duty to pay defense costs essentially applies to all legal actions against the directors arising out of their status as such. Continental promised to pay "on behalf of" the directors and officers "all loss which [they] shall become legally obligated to pay." ¶ I(a) to Policy, Ex. 1 to Rolfe Affidavit. Thus, once the "loss" or attorneys fees were incurred by the directors and officers, C.N.A.'s responsibility to reimburse the directors and officers attached.

A similar directors and officers policy was also interpreted recently to require contemporaneous payments of defense costs. *Okada v. M.G.I.C.*, 608 F.Supp. 383 (D. Hawaii 1985). In that case, shareholders of a bankrupt savings and loan sued the directors and officers claiming that their negligence caused the collapse of the institution. As in this case, that policy did not impose a "duty to defend" upon the insurer although the definition of loss included "defense costs." The Court explained that,

"the absence of policy language explicitly imposing a duty to defend does not

mean that the policy does not require the insurer to pay defense costs. Like liability arising from a judgment or settlement, attorneys fees are compensable losses under [the policy definition]. The only difference is that such fees come due earlier than any possible adverse judgment." *Id.* at 385.

Second, a liability insurer has a duty to pay all defense costs until it can confine its duty to pay only on those claims it has insured the policy holders against. *Shapiro v. American Home Assurance Company*, 616 F.Supp. 906, 913 (D.Mass.1985). Continental could excuse itself from the contemporaneous duty only if it could establish as a matter of law that there was no possible factual basis on which it might be obligated to indemnify the directors and officers. *Villa Charlotte Bronte, Inc. v. Commercial Union*, 64 N.Y.2d 846, 848, 487 N.Y.S.2d 314, 476 N.E.2d 640 (1985). Here Continental was obligated to pay incurred defense costs unless a final judgment found "material dishonesty" by the directors or officers. Continental has conceded that even if a final judgment had been entered such a conclusion was highly unlikely. Continental consequently had an obligation under the Policy to pay the directors' and officers' defense costs as they were incurred.

*The Terms of the Policy and Public Policy*

■ A class was certified against defendants only on the federal claim that they had violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10(b)–5. Liability under those provisions requires that plaintiffs prove intentional or reckless misconduct on the part of defendants. Continental claims as its seventh affirmative defense that a finding of liability on these claims would fall within the dishonesty exclusion of the Policy (¶ IV.b.5), and it should therefore not be held responsible to insure the directors and officers on the claims. Continental also asserts that indemnification against such charges is contrary to "public policy."

Insofar as concerns defense costs, this argument adds nothing. Under the terms of the policy, Continental agreed to pay all costs for defending and settling claims for actual and *alleged* Wrongful Acts. The exclusion for "dishonesty" attaches only after a "final judgment or other final adjudication" implicates the directors. Such a finding is no longer possible in this case. The class action claims have been dismissed with prejudice and although the S.E.C. investigation resulted in charges against PepsiCo, none were asserted against any of its directors or officers. Continental cannot now put the directors and officers other than Ahern on trial to determine whether or not they were, in fact, dishonest to the point that the policy will not cover them.

The policy at issue here is critically different from the one at issue in *Stargatt v. Avenall*, 434 F.Supp. 234 (D.Del.1977), cited by defendant. The insurance company in that case was permitted to contend that the directors' and officers' dishonesty barred reimbursement under the policy. That policy's dishonesty exclusion, however, was unconditional and did not predicate its applicability upon a "final judgment or other final adjudication." *Compare Id.* at 242–242, *with* ¶ IV.(b)(5) of Policy, Ex. 1 to Rolfe Affidavit.

Public policy also does not bar reimbursement of the defense and settlement costs. Continental agreed to reimburse PepsiCo for such payments whenever PepsiCo "may be required or permitted by law" to indemnify its directors and officers. Continental suggests that Delaware Corporation Law bars corporate indemnification of settlements involving alleged Rule 10-(b)(5) violations, and that even if it does permit indemnification for such claims, a genuine issue of material fact remains as to whether the PepsiCo directors' indemnification decision was procedurally flawed.

Continental refers to the Delaware Corporation Law, § 145, which provides when, and under what conditions, a corporation may indemnify its directors and officers. Section 145(a), for example, permits indemnification when a director or officer "acted in good faith and in a manner he reason-

ably believed to be in or not opposed to the best interests of the corporation." Section 145(d) establishes the appropriate manner for making the determination that the director or officer "has met the applicable standard of conduct." PepsiCo's failure to satisfy these procedures or even to make an evaluation of the directors and officers actions is made irrelevant by the fact that these provisions are not exclusive conditions for indemnification. The statute itself makes clear that these are simply "fall back" provisions which a Delaware corporation may or may not adopt. Section 145(f) of the Delaware Code states that "the indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise ..." The Delaware Supreme Court has applied this section literally, holding that "[t]he corporation can ... grant indemnification rights beyond those provided by the statute." *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 344 (Del.1983).

PepsiCo has adopted a by-law that broadens its ability to indemnify its directors and officers. The pertinent section provides that,

"[u]nless the Board of Directors shall determine otherwise, the Corporation shall indemnify, to the full extent permitted by law, any person made ... a party to an action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he ... is or was a director, officer or employee of the Corporation ... against expenses (including attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding." PepsiCo By-Laws § 3.07. Ex. 9 to Rolfe Affidavit.

This By-Law makes indemnification of PepsiCo directors and officers the rule rather than the exception. PepsiCo has, therefore, supplanted the "backstop" provisions included in Del.Corp. Law §§ 145 (a),

(b). The procedures detailed in § 145(d) apply only when a corporation indemnifies pursuant to those backstop provisions. The simple vote of the Board of Directors, according to the corporation's By-Laws, was a procedurally correct method of indemnifying the directors. Accordingly, no further discovery pursuant to Fed.R.Civ.P. 56(f) on this issue is necessary.

*Allocation*

█ PepsiCo argues that Continental should reimburse the corporation the full amount of the settlement costs (up to the policy limit) because the directors and officers insured by Continental remain jointly and severally liable for the entire amount. Continental contends that despite the unitary nature of the claims, the directors' and officers' risk of liability was minimal relative to the risk facing PepsiCo and Arthur Young. It contends that some allocation must be made among the defendants. Alternatively, Continental has amended its answer to include its demand that it be allowed to insist upon contribution from PepsiCo and Arthur Young as joint tortfeasors. According to Continental, it would be unfair that PepsiCo and Arthur Young, neither of which are insured by Continental, should "free ride" on the directors and officers insurance policy.

The policy clearly provides that it covers only the directors and officers of PepsiCo, not the corporation and not its accounting firm. *See* Policy ¶ ¶ I.(a), I.(b), Ex. 1 to Rolfe Affidavit. The policy provides for payments to PepsiCo only for the amount it indemnifies the defendant directors and officers.

Our Court of Appeals, applying New York law, has permitted insurance companies the right to apportion payments on a lump sum settlement according to who was or was not insured. In *H.S. Equities, Inc. v. Hartford Accident and Indemnity Co.,* 661 F.2d 264 (2d Cir.1981) the insurer, Hartford, had issued a blanket brokers bond which insured H.S. Equities for "any loss through any dishonest, fraudulent or criminal act of any of its Employees." Hartford had also agreed to indemnify the

costs of defending against an insurable claim. Two H.S. Equities customers sued the company and one of its agents for violations of the Federal Securities Laws and for breaches of common law fiduciary duty. The two customers ultimately settled their claims against H.S. Equities and the agent for a lump sum settlement of $130,000. Hartford refused to pay the full settlement amount "on the ground that there was no evidence of [the agent's] dishonesty." *Id.* at 267. H.S. Equities sued to recover on the insurance policy. The District Court found that the settlement "conclusively established" the insurance company's liability under the Bond for the part of the settlement attributable to the claims covered by the insurance policy. The Court of Appeals reversed this aspect of the District Court's holding; it ruled that such a settlement constituted only "presumptive evidence" of the insurance company's liability. The case was accordingly remanded to the district court to make the appropriate finding. The Court of Appeals affirmed, however, the District Court's conclusion that one half of the settlement amount was attributable to alleged transgressions on the part of H.S. Equities, which was not insured by Hartford. *Id.* at 272.

PepsiCo contends that *H.S. Equities* differs from the instant case because the class action complaint in this case involved claims of joint and several liability against all the defendants. Paragraph VI of the Policy provides, however, that, "[n]o costs, charges, or expenses shall be incurred, or settlements made, without Underwriters' consent, such consent not to be unreasonably withheld." C.N.A. has not yet approved the settlement. The parties agreed to a "non-waiver" agreement that provided that Continental would not object to the settlement at the time it was proposed but retained its right to object to the settlement if it later determined that it was not "reasonable".

Continental has now made clear that it finds the settlement is reasonable as a whole. (Tr. 16–17). It objects, however, that the amount is unreasonable if it is considered a measure of the directors' and officers' liability. Continental would have been within its rights to make this sort of objection under the Policy prior to the settlement; because of the non-waiver agreement it may raise these same objections now. Continental has not insured the Corporation or Arthur Young, both of which benefitted from the settlement. It is extremely unlikely that the directors and officers would have agreed to a settlement, the costs of which they would be expected to pay in toto. It is equally unlikely that Continental would have approved such a settlement. Allocation of responsibility according to the relative exposures of the respective parties to the class action litigation is therefore appropriate.

■ Although jointly and severally liable to the plaintiffs, joint tortfeasors may demand contribution from each other, even in a securities fraud case. *See, e.g., Sirota v. Solitron*, 673 F.2d 566 (2d Cir.) *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). These allocations are often made, albeit only as approximations, according to some notion of relative fault. *See McLean v. Alexander*, 449 F.Supp. 1251 (D.Del.1978). *rev'd on other grounds*, 599 F.2d 1190 (3d Cir.1979). The allocation of risk in this case does not appear to present any special complexity or difficulty.

This court concludes, therefore, that the Policy requires the parties to allocate the settlement costs between those amounts attributable to the directors and officers and those attributable to PepsiCo and its accountants. Evidence of a good faith settlement of the underlying litigation, however, creates a presumption that the costs are covered by the policy. *See H.S. Equities*, 661 F.2d at 269. Continental must accordingly bear the ultimate burden of proving what amount of the settlement cost should be excluded from the policy coverage.

## MOTIONS TO DISMISS

### Anti Trust Claim

■ PepsiCo's antitrust claim, Count IX of its complaint, asserts that Continental

has failed to deal with it in good faith with respect to this insurance policy. The complaint lists the following specific harms:

"CNA has engaged in one or more of the following acts, among others:

(a) it has unreasonably and unjustifiably denied coverage of PepsiCo's claims;

(b) it has unreasonably and unjustifiably delayed in honoring PepsiCo's claims, thereby holding PepsiCo's money and earning interest on that money at rates higher than the legal rate;

(c) it has unreasonably and unjustifiably asserted grounds for noncoverage that do not have any basis in fact or in law, that are contrary to public policy, and that constitute malicious, wanton, and wrongful denials made in gross disregard of PepsiCo's rights;

(d) it has made false and misleading representations concerning the coverage afforded by its policies;

(e) it has set the terms and conditions upon which it would deal with PepsiCo;

(f) it has wrongfully threatened to attempt to rescind the CNA Policies should PepsiCo press its claim for coverage under them; and

(g) it has wrongfully cancelled the 1984–1987 Policy, thereby refusing to deal with PepsiCo." ¶ 39, Complaint at 15.

PepsiCo contends that Continental's behavior is part of a conspiracy among Continental and other insurance companies, underwriters and their agents directed against PepsiCo and other policy holders. Complaint at ¶ 40. This conspiracy, according to the complaint, is a *per se* violation of the Antitrust laws and may have "the effect of enabling CNA (a) to monopolize or attempt or conspire to monopolize, (b) unreasonably restrain trade and competition in and (c) substantially lessen competition in the market for the purchase or sale of D & O liability insurance or in one of more lines of commerce within that market." Complaint, ¶ 42.

Continental has moved to dismiss this antitrust claim for failure to make sufficient allegations of anti-competitive effects. The list of wrongs alleged in ¶ 39 of the complaint are simply alleged business torts and do not amount to antitrust violations. An antitrust claim must allege some injury to competition, not simply to a competitor or customer. *Brunswick v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Although PepsiCo has made some allegations of this sort, Continental describes those allegations as conclusory assertions.

A conspiracy not to honor contracts does not necessarily describe an anti-competitive arrangement. As the late Judge Friendly explained, "[c]ombining an assertion of general antitrust violation with a claim of injury from breach of contract or tort does not automatically make the latter a claim arising under the antitrust laws." *Salerno v. American League of Professional Baseball Clubs*, 429 F.2d 1003, 1004 (2d Cir. 1970); *see also U.N.R. v. Continental Insurance Co.*, 607 F.Supp. 855, 861 (N.D.Ill. 1984).

■ The Supreme Court, however, has made clear that insurance companies may be called upon to answer complaints brought under the antitrust laws where those complaints allege "boycotts or other refusals to deal." Such boycotts are not limited to those that have competitors as targets. Rather, the term "boycott" in this context includes refusals to deal in cases where the target is a customer of some or all of the conspirators. *St. Paul Fire & Marine Insurance Co. v. Barry*, 438 U.S. 531, 542, 98 S.Ct. 2923, 2930, 57 L.Ed.2d 932 (1977).

PepsiCo has alleged a concerted refusal to deal on the part of Continental and some or all of its competitors. Paragraph 40 of the Complaint, which makes a conspiracy allegation, incorporates by reference all of Paragraph 39 of the Complaint. As already quoted above, subsection (g) of that paragraph alleges a "refusal to deal." This claim therefore survives defendant's motion to dismiss. Whether it can be supported by credible evidence remains to be seen.

*Fraud Claims*

■ PepsiCo's complaint includes several claims of fraud and mispresentation in Counts VII, VIII and X. Rule 9(b), Fed.R. Civ.P. requires plaintiffs to state their allegations of fraud with particularity. Continental argues that PepsiCo has failed to provide it with adequate notice of the fraud claims as required by Rule 9(b).

PepsiCo's complaint as pleaded does not satisfy the Rule 9(b) requirements. The basic outline of PepsiCo's fraud claims is relatively straightforward and simple, *viz.* that Continental is attempting to disavow its insurance contract with PepsiCo and that it may never have intended to honor the agreement from the outset. As pleaded, the fraud allegations easily satisfy the basic Rule 8 requirements. Rule 9(b), however, imposes a higher standard on fraud pleadings. Courts have generally interpreted the particularity command as requiring a party to plead the circumstances surrounding the fraud, including the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Robertson v. National Basketball Association,* 67 F.R.D. 691, 697 (S.D.N.Y.1975); *see also Todd v. Oppenheimer Co.,* 78 F.R.D. 415, 420–421 (S.D.N.Y.1978).

PepsiCo did not need to include the name of the individual who wrote the fraudulent statements as long as it can allege that Continental adopted them. It has failed, however, to state when and where the statements appeared in any of the claims alleging fraud. The portions of Count X that allege fraud, subsections (a) and (f), do not identify what statements, documents, or policy provisions included knowing misrepresentations. Counts VII and VIII and Count X, subsections (a) and (f) are dismissed without prejudice. Plaintiff if so advised may replead and particularize its allegations within thirty (30) days.

*New York State Insurance Law Claims*

■ PepsiCo alleges in Count VI that Continental wrongfully cancelled the 1984–1987 policy and seeks declaratory relief and damages. Continental claims that, under the contract, it was entitled to terminate the policy at will. It also points out that N.Y. Ins. Law § 3425 has placed restrictions only on the cancellation of specific sorts of insurance policies, and does not include directors and officers policies among them. The parties have not cited nor has the Court found any New York cases that have extended non-cancellation protection to this sort of insurance policy. In light of the detail of the section, we may conclude *expressio unius est exclusio alterius* and find accordingly that PepsiCo does not have a wrongful termination remedy available to it under New York law.

■ Count VI, however, does not cite to the New York Insurance Law as the sole basis for its claim. This count may properly be read as alleging a violation by Continental of the implied covenant of good faith and fair dealing, which is implied in all contracts under New York law. *See Kirke La Shelle Co. v. Paul Armstrong Co.,* 263 N.Y. 79, 188 N.E. 163 (1933). Whether or not Continental has violated this implied covenant remains a disputed issue of fact on the present state of the record and so Count VI survives the motion to dismiss.

■ PepsiCo's complaint refers to other sections of the New York Insurance Law. Counts VIII, IX, and X make reference to N.Y. Ins. Law § 2403 and Counts VI, IX, and X include N.Y. Ins. Law § 2601. Section 2403 provides as follows:

"No person shall engage in this state in any trade practice constituting a defined violation or a determined violation defined herein [in specified sections of the Insurance Law]."

Section 2601(a) provides as follows:

"No insurer doing business in this state shall engage in unfair claim settlement practices. Any of the following acts by an insurer, if committed without just cause and performed with such frequency as to indicate a general business practice, shall constitute unfair claim settlement practices:

(1) knowingly misrepresenting to claimants pertinent facts or policy provisions relating to the coverage at issue;

(2) failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;

(3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

(4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear ...; or

(5) compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits by them."

New York courts have not established a private right of action pursuant to these regulations. *See Cohen v. New York Property Insurance Underwriting Ass'n.,* 65 A.D.2d 71, 79, 410 N.Y.S.2d 597 (1978); *see also Royal Globe Insurance Co. v. Chock Full O'Nuts Corp.,* 86 A.D.2d 315, 316–317, 449 N.Y.S.2d 740 (1982). A private right of action would only be implied where a court can discern the legislative intent to create such a private remedy. *See Burns Jackson et al. v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). These sections were promulgated to protect New York state insurance customers from generally deceptive business practices and are part of a single, cohesive administrative scheme that empowers the State Insurance Department to regulate the insurance industry. *See Frizzy Hairstylists, Inc. v. Eagle Star Insurance Co.,* 93 Misc.2d 59, 403 N.Y.S.2d 389, 390 (App. Term 2d Dep't. 1977). This Court is unable to discern any legislative intent to create a private right of action for policy holders pursuant to either of these provisions.

The fact that these provisions do not provide for private causes of action, however, is not fatal to any of PepsiCo's claims. Count VII (fraud) and Count IX (antitrust) are based on either common law or statutory causes of action. The inclusion of the Insurance Law provisions in these counts is proper as an expression of public policy and as evidence of Continental's duties to its insureds. Count X alleges general and systematic deceptive business practices and may be maintained as a claim for violation of the implied covenant of good faith and fair dealing for the same reasons as explained in connection with the discussion of Count VI above.

Continental has challenged Count XI as a kitchen sink count intended to support a claim for punitive damages. Whether or not this count is viewed in that light, it survives this motion to dismiss. New York courts permit an award of punitive damages when one of two conditions is present. First, when defendant's actions are directed at the public generally and second when the availability of such an award is essential to induce a potential plaintiff to go to court to right a wrong that might otherwise go unremedied if the injured party were limited to compensatory damages. *See Walker v. Sheldon,* 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); *see also Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1080 (2d Cir.1977); *Texaco, Inc. v. Pennzoil Company,* 626 F.Supp. 250, 254 (S.D.N.Y.1986). Viewed at this stage of the litigation, punitive damages should be regarded as unlikely but not impossible. Since plaintiff can only recover once, however many theories are pleaded, the complaint seems unduly complex and theoretical. When pre-trial proceedings are completed, the Court may make an order limiting the issues to be tried, as contemplated by Rule 16(c)(1) Fed. R.Civ.P.

PepsiCo's motions for partial summary judgment are granted in part and denied in part. Continental's motions to dismiss are denied except that PepsiCo's fraud claims are dismissed without prejudice to amend its complaint if so advised within thirty (30) days.

The parties shall confer and establish a schedule to complete pre-trial proceedings

and shall go forward with any necessary discovery. They shall attend a status conference at the United States Courthouse, 101 East Post Road, White Plains, New York on September 29, 1986 at 9:00 a.m.

So Ordered.

### ON MOTION FOR CLARIFICATION

Continental Casualty Company ("Continental") has asked this Court to clarify and reconsider portions of its Partial Summary Judgment decision, dated June 23, 1986 (the "Decision"). Familiarity with the Decision and the circumstances surrounding this litigation must be assumed. In that Decision this Court determined, *inter alia,* that the insurance policy issued to PepsiCo established a duty on Continental's part to pay the directors' and officers' defense costs as they were incurred. This Court also determined that, with respect to the allocation of the settlement cost, Continental bore the ultimate burden of proof on that issue. Continental seeks to clarify whether defense costs, like the settlement costs must be allocated and asks reconsideration of the burden of proof assignment.

*Defense Costs*

■ PepsiCo moved in this Court for an interpretation of its insurance policy as it applied to the Class Action Securities Litigation defense costs. Accordingly, this court's decision interpreting that aspect of the policy resolved the issue concerning that litigation and did not necessarily resolve the issue concerning those defense costs incurred in behalf of the officers and directors in the SEC and the Grand Jury investigations. At least on the record presently before this Court, because the litigation and the investigations were each directed at the same allegedly fraudulent activity, and were directed against both PepsiCo and its directors and officers, it would seem that these defense costs, like the costs of defending the class action, are properly the subject of indemnification, and therefore a covered loss within the policy.

Implicit, and we think obvious, in the portion of the Court's opinion addressing the defense costs issue is our conclusion that Continental has no contemporaneous duty to pay *all* defense costs incurred by Pepsico, where a portion of those costs is attributable not to the officers and directors, but to the defense of PepsiCo itself. Only defense costs incurred on behalf of the directors and officers are within the "Loss" definition of the policy.

*Burden of Proof*

■ On reconsideration the Court adheres to its conclusion that, "Continental must ... bear the ultimate burden of proving what amount of the settlement cost should be excluded from the policy coverage." Decision at 662. PepsiCo paid the settlement fund and received releases in favor of itself and its directors and officers as well as its accounting firm. The policy language, Section III.(d), defines "Loss" as

> "any amount which the Directors and Officers are legally obligated to pay for which they are not indemnified by the Company, or for which the Company may be required or permitted by law to pay as indemnity to the Directors and Officers, for a claim or claims made against them for Wrongful Acts, and shall include ... settlements."

In order to avoid total liability Continental must show the amount that the uninsured defendants are equitably required to share. The lesson of *H.S. Equities v. Hartford Accident and Indemnity Co.,* 661 F.2d 264 (2d Cir.1981) is that once an insured has presented a claim under the policy based on a good faith settlement, the insurer bears the burden of proving that all or a portion of the total paid in settlement is excluded from the policy coverage.

The foregoing constitutes this Court's clarification of its Memorandum and Order dated June 23, 1986. In all other respects Continental's motion is denied.

So Ordered.