David **FOSTER**, et al., Appellants,

v.

**SUMMIT MEDICAL SYSTEMS, INC.**, et al., Respondents.

No. C5–99–1724.

Court of Appeals of Minnesota.

May 16, 2000.

Timothy R. Schupp, Heidi A. Schneider, Gartner Bennett & Schupp, PC, Minneapolis, for plaintiffs-appellants.

Peter S. Hendrixson, Brian E. Palmer, Peter W. Carter, Dorsey & Whitney LLP, Minneapolis, for defendants-respondents.

Considered and decided by
HALBROOKS, Presiding Judge,
RANDALL, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge.

Appellants, insurers, challenge the summary judgment holding that respondents' directors' and officers' liability insurance policies provided coverage for losses from securities lawsuits against respondents and from a Securities Exchange Commission (SEC) investigation involving respondents. Because we hold that the insurance policies' retroactive date exclusions bar coverage for the losses from the underlying lawsuits and that the SEC investigation is

not a covered claim under the policies, we reverse and remand with directions that the district court enter summary judgment for appellants.

## FACTS

### 1. The Underlying Actions

On June 21, 1995, respondent Summit Medical Systems, Inc. (Summit) filed a registration statement and draft prospectus with the SEC, which resulted in its stock being first publicly traded in August 1995. In March 1997, Summit publicly announced that, due to accounting errors, its year-end revenue statements for 1994–1996 would be corrected downward by a total of $4,000,000 to $6,000,000. Thereafter, ten securities lawsuits were filed against Summit and the other respondents. The SEC also commenced an investigation of Summit.

The lawsuits were consolidated so that only two lawsuits, a class action suit and a suit by the Teachers' Retirement System, went forward against respondents. The plaintiffs in these suits alleged that respondents had plotted to inflate revenue and had artificially inflated Summit's stock prices by disseminating false and misleading financial statements. The class-action plaintiffs specifically alleged that:

> To make the Company attractive to its targeted investors, [respondents] sought to create the appearance of a Company with active market appeal, strong growth potential and a consistent and steady revenue stream. In order to achieve this, [respondents] implemented a scheme and common course of conduct to inflate sales and revenue figures. Pursuant to the scheme, [respondents] instituted aggressive quarterly sales and revenue goals for the quarters preceding the June 1995 Initial Offering and for each quarter thereafter during the Class Period, and then consistently "met"

those goals by recognizing revenue on transactions which did not qualify as sales under [generally accepted accounting principles] and were contrary to Summit Medical's own revenue recognition policy.

Respondents had allegedly inflated revenue by recognizing letters of intent rather than completed sales contracts, even though the letters of intent did not always result in signed contracts, and by initiating sham transactions with other companies. These acts began before Summit filed its registration statement on June 21, 1995, and continued into 1996.

Respondents had disseminated the inflated revenue figures to the public in the June 21, 1995, registration statement, draft prospectus, and subsequent public statements. The plaintiffs alleged that, in these public statements, respondents made false and material misstatements regarding their revenue and sales figures and their financial practices.

### 2. The Policies[1]

Respondents sought insurance coverage for losses from these lawsuits under directors' and officers' liability insurance they had purchased from appellants. The policies covered the directors and officers for "Loss" resulting from any "Claim" made during the certificate period for a "Wrongful Act." The policies also covered Summit for "Loss" resulting from a "Securities Action Claim" for a "Wrongful Act."

Coverage for wrongful acts prior to the effective date of the insurance was limited by a retroactive date exclusion clause. At respondents' request, the parties chose as the retroactive date, June 21, 1995, the date that the registration statement and draft prospectus were filed. The exclusion clause bars coverage for any claim arising out of "any Wrongful Act actually or allegedly committed prior to June 21, 1995," or

---

1. "Policies" are a primary insurance policy and an excess insurance policy, both with identical terms.

interrelated wrongful acts committed thereafter.

Appellants brought an action for a declaration of no coverage for the lawsuits because of the retroactive date exclusion clause and for the SEC investigation because of the policy definition of "Securities Action Claim." Following cross-motions for summary judgment, the district court granted summary judgment to respondents, holding that the wrongful act was the public dissemination of improper revenue figures, which occurred after the retroactive date and that the SEC investigation constituted a claim under the policies. This appeal followed.

### ISSUES

1. Does the retroactive date exclusion bar coverage for the lawsuits against respondents?

2. Does the SEC investigation constitute a covered "Securities Action Claim" under the policies?

### ANALYSIS

■■■ "Insurance coverage issues and the interpretation of insurance contract language are questions of law, reviewed de novo." *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997). In interpreting insurance contracts, the court must ascertain and give effect to the intentions of the parties as reflected in the terms of the insurance contract. *Id.* If policy language is unambiguous, there is no reason for construction, and the court must "attribute the usual and accepted meaning" to the language. *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227–28 (Minn.1996).

#### 1. Retroactive Date Exclusion

■■ The policies here exclude coverage for claims

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) any Wrongful Act actually or allegedly committed prior to June 21, 1995, or

(2) any Wrongful Act occurring on or subsequent to June 21, 1995 which, together with a Wrongful Act occurring prior to such date would constitute Interrelated Wrongful Acts.

The "Interrelated Wrongful Acts" policy language is broad and encompasses the acts in question. *See Faber v. Roelofs*, 311 Minn. 428, 436, 250 N.W.2d 817, 822 (1977) (the phrase "arising out of" is broad). The policies defined "Wrongful Act" in relevant part as

any actual or alleged error, omission, misstatement, misleading statement, neglect, breach of duty or negligent act by any of the Directors and Officers, while acting solely in their capacity as a director or officer of the Company.

The allegations that respondents improperly recognized revenue from letters of intent and sham transactions are alleged errors, breaches of duty, or negligent acts. Thus, the acts of improperly recognizing revenue are "Wrongful Acts."

■■ The policies define "Interrelated Wrongful Acts" as "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions." Recognizing revenue from letters of intent or sham transactions involved repetition of the same transactions. *See American Commerce Ins. Brokers*, 551 N.W.2d at 231 (holding that there were two sets of interrelated acts of embezzlement from employer, embezzlement by issuing unauthorized payroll checks and embezzlement by taking funds from the employer received as insurance premiums). Each series of transactions was comprised of interrelated acts that occurred both before and after the retroactive date. Thus, each element of the retroactive date exclusion clause is satisfied and coverage for the underlying actions is barred.

Respondents argue that the retroactive date exclusion does not apply because liability does not arise from the improper revenue recognition; it arises only from the dissemination of false and misleading statements to the public. But the policies do not require that the "Wrongful Acts" or "Interrelated Wrongful Acts" be key to finding liability. Under the policies, coverage is excluded if the claim even "indirectly result[s] from or [is] in consequence of, or in any way involve[s]" the wrongful acts, i.e., respondents' improper revenue recognition.

Moreover, even if the relevant wrongful act was the dissemination of inaccurate financial information, the dissemination was "interrelated" with the improper revenue recognition. The policies define "Interrelated Wrongful Acts" broadly and respondents could not articulate any basis for a determination that the improper revenue recognition was not interrelated with the dissemination of inaccurate financial information. The improper revenue recognition was the very reason that the statements about revenue and sales were false and misleading. In both complaints, the allegations regarding improper revenue recognition and dissemination of inaccurate financial information were interrelated.

Respondents also argue that appellants' interpretation renders the insurance worthless. But respondents specifically negotiated June 21, 1995, as the retroactive date. Had respondents wanted to purchase a policy with greater coverage or a different retroactive date, they could have done so.

## 2. Securities Action Claim

Appellants denied coverage for loss from the SEC investigation on the basis that the investigation was not a "Securities Action Claim." The policies define "Securities Action Claim" as

any judicial or administrative proceeding initiated against any of the Directors and Officers or the Company based upon, arising out of, or in any way involving the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities Exchange Commission under either or both Acts, similar securities laws or regulations of any state, or any common law relating to any transaction arising out of, involving, or relating to the sale of securities *in which they may be subjected to a binding adjudication of liability for damages or other relief, including any appeal therefrom.*

(Emphasis added.) The parties agree that the SEC investigation is an administrative proceeding but dispute whether it is a proceeding in which respondents "may be subjected to a binding adjudication for * * * relief."

Respondents argue that the investigation satisfies this requirement because the SEC issued a subpoena duces tecum. But the ordinary understanding of the term "relief" is assistance or something that lessens pain or discomfort. *See* American Heritage Dictionary 1044 (2d ed.1976). In a legal context, the term "relief" refers to redress or benefit, especially equitable redress such as an injunction or specific performance. *See* Black's Law Dictionary 1293 (7th ed.1999). Issuing a subpoena does not fit within either meaning of the term "relief." *See City of Thief River Falls v. United Fire & Cas. Co.,* 336 N.W.2d 274, 276 (Minn.1983) (holding that petition for mandamus to compel city to initiate condemnation proceedings was not a "suit * * * seeking damages" within the plain meaning of the insurance policy because its essence was to secure performance of a legally required act rather than provide damages).

To support their broad reading of "relief," respondents rely on *PepsiCo, Inc. v. Continental Cas. Co.,* 640 F.Supp. 656, 666 (S.D.N.Y.1986) (holding that costs incurred in an SEC investigation met the definition of "loss" in the policy). But in *PepsiCo* the policy defined "loss" broadly as

amounts incurred in the defense of legal actions, claims or proceedings. *Id.* at 659. Here, "relief" is not similarly defined.

The SEC's ability to compel production of documents does not fit any reasonable reading of the term "relief." We conclude that the SEC investigation is not a "Securities Action Claim" under the policies.

## D E C I S I O N

The insurance coverage claim is barred by the policies' retroactive date exclusion and the SEC investigation is not a covered "Securities Action Claim." We reverse and remand with directions that the district court order summary judgment for appellants.

**Reversed and remanded.**